Cecil CURRY–BEY, Individually and on behalf of others similarly situated, Plaintiffs,

v.

Delbert JACKSON et al., Defendants.

Civ. A. No. 76–170.

United States District Court, District of Columbia.

Nov. 5, 1976.

Charlotte S. Keller, Neighborhood Legal Services Program, Washington, D. C., for plaintiff and his class.

George T. Masson, Asst. Corp. Counsel, Washington, D. C., for defendants of the District of Columbia.

John Marshall Meisburg, Crim. Div., U. S. Dept. of Justice, Washington, D. C., for federal defendants.

## MEMORANDUM OPINION

FLANNERY, District Judge.

Plaintiffs are prisoners at Lorton Correctional Complex who challenge the authority of prison officials to order their transfer, without a fact-finding hearing, to federal penal and correctional institutions in other states for disciplinary reasons. During the progress of this litigation, the Supreme Court decided two cases having an important bearing on the validity of plaintiffs' claims. *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). Subsequent to those decisions, the federal and District of Columbia defendants moved to dismiss the complaint. Oral argument was held July 27, 1976, on defendants' motion to dismiss, but plaintiffs requested a second hearing so that they might more fully elucidate the factors which they allege distinguish their case from the recent Supreme Court decisions.

*Meachum v. Fano* was a case in which a state prisoner contended that his right to due process of law had been unconstitutionally abridged by his transfer to another state institution without an adequate hearing, despite the fact that state officials apparently had absolute discretion as to the location of individual prisoners within the state system. The district court[1] had found that notice and hearing were required by the case of *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), where the Supreme Court had held due process to be violated by the deprivation, without notice and hearing, of good-time credits to which the complaining pris-

---

1. *Fano v. Meachum,* 387 F.Supp. 664 (D.Mass. 1975).

oner was entitled by statute. The decision of the district court in *Meachum* was affirmed by the court of appeals.[2] Reversing, the Supreme Court held that due process of law does not require that inmates receive notice and hearing prior to transfer, absent a justifiable expectation under state law that they would not be subject to transfer except in the event of misbehavior or some other specified occurrence.

Central to the decision of the Court in *Meachum,* and in its companion case *Montanye,*[3] was the notion that the convicted criminal is deprived of any liberty interest which might allow him to challenge his transfer from one prison to another and that, in the absence of specific state law to the contrary, prison officials are vested with virtually absolute authority to determine the place of incarceration. The Court in *Meachum* said:

> [G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution. The Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison . . . . Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.

96 S.Ct. at 2538.

Plaintiffs contend that their case is factually and legally distinguishable from *Meachum* and *Montanye,* both of which involved complaints by state prisoners who were transferred intrastate. They have submitted a number of legal arguments not addressed by the Court in *Meachum* and *Montanye* in an effort to avoid the holdings of those cases. Primarily, plaintiffs argue that the failure of the Attorney General, who by statute holds custody of both District of Columbia and federal prisoners, to grant District of Columbia prisoners the same procedural rights which federal prisoners enjoy upon transfer from one prison to another is a violation of the equal protection clause. They further allege that they have been denied equal protection of the law by the practice of D.C. prison officials of granting notice and hearing prior to the imposition of certain punishments but not prior to transfer for disciplinary purposes. In addition to these equal protection claims,[4] plaintiffs insist that the actions of prison officials in this case infringe certain substantive rights which were not in issue in *Meachum* or *Montanye* and that their case should not, therefore, be controlled by the Supreme Court decisions. Specifically, plaintiffs contend that their transfer, without notice and hearing, significantly abridged their first and sixth amendment rights of association, of redress of grievances, and of access to the courts and to counsel. Furthermore, they argue that both the laws and regulations of the District of Columbia and the practice of D.C. officials give rise to the sort of "justifiable expectation" which the Supreme Court suggested might trigger due process protections.[5] Finally, plaintiffs contend that their interest in liberty has been harmed by the stigma of transfer, which will adversely affect future parole decisions, and that the circumstances of the transfer amount to

---

2. *Fano v. Meachum,* 520 F.2d 374 (1st Cir. 1975).

3. In *Meachum v. Fano,* the court of appeals had held that every disadvantageous transfer must be accompanied by appropriate hearings. In *Montanye v. Haymes,* however, the Second Circuit exempted administrative transfers from its ruling, even though such transfers may have substantially the same effect upon prisoners as disciplinary transfers. *See* 96 S.Ct. at 2547.

4. The equal protection clause of the fourteenth amendment is not, of course, strictly applicable to the District of Columbia, but the Supreme Court in *Bolling v. Sharpe,* 347 U.S. 497, 498–99, 74 S.Ct. 693, 98 L.Ed. 884 (1954), has held that notions of equal protection inhere in the concept of due process as found in the fifth amendment, which is applicable to the District of Columbia.

5. *See Montanye v. Haymes,* 96 S.Ct. at 2547.

cruel and unusual punishment in violation of the eighth amendment.

With respect to the first equal protection claim, plaintiffs rely on the fact that both D.C.Code offenders and federal offenders are committed to the custody of the Attorney General by statute, but the Attorney General, through the Bureau of Prisons, allows only inmates incarcerated in federal prisons to enjoy certain procedural rights prior to transfer to another prison.[6] Section 24–425 of the D.C.Code provides in pertinent part:

> All prisoners convicted in the District of Columbia for any offense . . . shall be committed . . . to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinement where the sentences of all such persons shall be served. The Attorney General may designate any available, suitable, and appropriate institutions, whether maintained by the District of Columbia Government, the federal government, or otherwise, or whether within or without the District of Columbia. The Attorney General is also authorized to order the transfer of any such person from one institution to another if, in his judgment, it shall be for the well-being of the prisoner or relieve overcrowding or unhealthful conditions in the institution where such prisoner is confined, or for other reasons.[7]

If this provision stood in isolation, there might arguably be a valid claim that the Attorney General had unequally treated prisoners who were similarly situated by giving federal inmates valuable procedural rights and denying those same rights to D.C. prisoners at Lorton. The notion that Lorton prisoners and prisoners in federal institutions are similarly situated is, however, denied by the terms of § 24–442 of the D.C.Code. That statute provides:

> Said Department of Corrections . . . shall have charge of the management and regulation of the Workhouse at Occoquan in the State of Virginia, the Reformatory at Lorton in the State of Virginia, and the Washington Asylum and Jail, and be responsible for the safekeeping, care, protection, instruction, and discipline of all persons committed to such institutions. The District of Columbia shall have power to promulgate rules and regulations for the government of such institutions and the Department of Corrections with the approval of the Commissioners shall have the power to establish and conduct industries, farms, and other activities, to classify the inmates, and to provide for their proper treatment, care, rehabilitation, and reformation.

Section 24–442 clearly commits to the discretion of the District of Columbia Department of Corrections the operation of the Lorton facility. Though the Attorney General may have custody of Lorton prison-

---

**6.** The Bureau of Prisons regulations provide, in Policy Statement No. 7400.5D at page 11, that "[a]n inmate may not be placed in disciplinary segregation, have his good time withheld or forfeited, be transferred to another institution for disciplinary reasons, or have the Bureau recommend retardation or rescission of a parole grant unless there has been a fact-finding hearing . . . ." The policy statement specifies that the hearing shall include the following procedures: advance written notice of the charges; the assistance of staff members in preparation for the hearing; the right to call witnesses; the requirement that a record be kept of the hearing; the right of the inmate to be present at the hearing, except during deliberations or when institutional security would be jeopardized; and the right to appeal the initial decision on certain limited grounds.

**7.** This language of the D.C.Code is virtually the same as that found in 18 U.S.C. § 4082, which deals with federal offenders:

> (a) A person convicted of an offense against the United States shall be committed, for such term of imprisonment as the court may direct, to the custody of the Attorney General of the United States, who shall designate the place of confinement where the sentence shall be served.
> (b) The Attorney General may designate as a place of confinement any available, suitable, and appropriate institution or facility, whether maintained by the Federal Government or otherwise, and whether within or without the judicial district in which the person was convicted, and may at any time transfer a person from one place of confinement to another. . . .

ers in a narrow technical sense by virtue of statute, such prisoners are in fact governed by rules and regulations promulgated by the D.C. government until such time as they may be transferred to a federal prison under the aegis of the Bureau of Prisons. If D.C. prison officials choose to withhold from Lorton inmates procedural rights which the Supreme Court has clearly held to be a matter of discretion, those inmates are bound by that decision for as long as they remain at Lorton, and the Attorney General is under no duty to see that such procedural rights are afforded to them. District of Columbia prisoners are not to be equated with federal prisoners, nor are their rights necessarily the same. In any event, the procedural rights at issue in this case belong to federal prisoners by virtue of their incarceration in a federal facility governed by Bureau of Prison regulations. Once a D.C.Code offender is transferred to a federal prison, or if he is initially incarcerated in a federal prison, he, too, is entitled to the procedural safeguards which plaintiffs seek. The fact that any inmates, whether federal offenders or D.C.Code offenders, enjoy such rights prior to transfer is, after the *Meachum* and *Montanye* decisions, a result of a discretionary decision of prison officials. District of Columbia prison officials, who exercise control over the Lorton facility, are not required to offer those rights merely because their counterparts in the federal prison system do so. Plaintiffs' first equal protection argument must, therefore, be rejected.

■ The second equal protection argument offered by plaintiffs—that equal protection is violated by the fact that Lorton prisoners are given certain procedural rights before receiving some punishments but not before being transferred for disciplinary purposes—is barred by the Supreme Court's action in *Montanye v. Haymes*. In making this argument, plaintiffs rely exclusively on the district court's decision in *Gomes v. Travisono*, 353 F.Supp. 457 (D.R.I.

1973). Though it was not expressly mentioned by the Court in *Montanye*, this case was effectively overruled by the Court's decision. The prisoner in *Montanye* had apparently made the very argument which plaintiffs now make, and that argument was accepted by the Second Circuit, which grounded its decision in favor of the prisoner in both the due process and the equal protection clauses. *United States v. Montanye*, 505 F.2d 977, 981 (2d Cir. 1974), citing *Gomes v. Travisono*, 490 F.2d 1209, 1215 (1st Cir. 1973). Such reasoning was expressly rejected by the Supreme Court. 96 S.Ct. at 2547. It is clear from the Court's recent decisions in *Montanye* and *Meachum* that the decision to transfer an inmate, whether it be for administrative or for disciplinary reasons, is lodged entirely within the discretion of prison officials. As the Court said in *Meachum*:

> That an inmate's conduct, in general or in specific instances, may often be a major factor in the decision of prison officials to transfer him is to be expected unless it be assumed that transfers are mindless events. A prisoner's past and anticipated future behavior will very likely be taken into account in selecting a prison in which he will be initially incarcerated or to which he will be transferred to best serve the State's penological goals.

*Id.* at 2540.

Plaintiffs are thus foreclosed from making an equal protection claim on the basis of the lack of notice and hearing prior to transfer from Lorton.

■ Plaintiffs also suggest that significant first and sixth amendment interests distinguish their case from the situations confronting the Supreme Court in *Meachum* and *Montanye*. Admittedly both those cases involve intrastate transfers, and plaintiffs have cited cases holding that interstate transfers of prisoners are unconstitutional in the absence of certain procedural protections.[8] It is doubtful, however, that those cases upon which plaintiffs rely

---

8. *Hoitt v. Vitek*, 361 F.Supp. 1238 (D.N.H. 1973), *aff'd sub nom. Laaman v. Vitek*, 502 F.2d 1158 (1st Cir. 1974); *Gomes v. Travisono*, 353 F.Supp. 457 (D.R.I.1973), *aff'd in part, rev'd in part*, 490 F.2d 1209 (1st Cir. 1973).

will survive the sweeping mandate of *Meachum* and *Montanye*. It is well settled that prisoners enjoy, at least to some extent, the rights which plaintiffs here claim: the rights of association, of redress of grievances, and of access to the courts and to counsel. All of those rights are retained by prisoners in federal prisons,[9] though D.C. Code offenders may find it somewhat more difficult to exercise certain of those rights if they are transferred to a distant federal prison. Such curtailment of rights is, however, to be expected when one is convicted and incarcerated as a criminal. *See Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). The difference between the interstate transfer of which plaintiffs complain and the intrastate transfer endorsed in *Meachum* and *Montanye* is one of degree, and the language of those two cases seems sufficiently broad in its grant of discretion to prison officials to cover cases of interstate transfer, even where such transfers involve great distances.[10] Regardless of the wisdom of such transfers, which often uproot the inmate and separate him from the rehabilitative influence of home and family, the decision to transfer or not is within the discretion of prison officials and is not subject to due process requirements of notice and hearing.

▮▮▮▮ Plaintiffs further argue that, both by statute and by virtue of the practices of D.C. prison officials, they have a "justifiable expectation" that they will be allowed to remain at Lorton, subject to the rules governing parole, work-release, furlough and good-time credit at Lorton as opposed to the less favorable rules typically found at federal institutions. In *Montanye*, the Court suggested that the due process clause might protect a prisoner from transfer without notice and hearing where there was "some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior or upon the occurrence of other specified events." 96 S.Ct. at 2547. Nothing in that case or in *Meachum* indicates, however, that such a right or expectation could arise merely from the practice of prison officials. At the very least, it would seem that a practice of prison officials would have to be manifested in a written policy statement, as was the case in *Perry v. Sindermann*, 408 U.S. 593, 599–60, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), before it would be sufficient to trigger due process protections. In the absence of a written rule or regulation confining transfers to cases of misconduct and in light of the clear and apparently limitless authority of the Attorney General to transfer Lorton prisoners to federal facilities, any expectation of a Lorton prisoner that he will not be transferred is unjustified.

▮▮▮▮ Nor do the D.C. statutes and regulations under which plaintiffs were incarcerated afford them rights of parole, work-release, furlough or good-time credit which would be unconstitutionally infringed by transfer to a federal prison. Plaintiffs seem to admit that their initial parole eligibility date would be unchanged by the transfer, but they allege that their conviction under the D.C.Code entitles them to be considered for parole by the D.C. Board of

9. *See* Bureau of Prisons Policy Statements Nos. 2001.2B, 2001.6A, and 7300.4A.

10. Plaintiff Curry-Bey was originally sent to Marion, Illinois, though he was later returned to Lorton after suffering an attack of asthma en route. Plaintiffs Morgan and Smith-El have been transferred to the federal prisons in Leavenworth, Kansas and Atlanta, Georgia, respectively. The deprivations facing them because of their transfers are not unlike those catalogued by the Second Circuit in its decision in the *Montanye* case:

The facts of this case may provide a good illustration of the real hardship in being shuttled from one institution to another. After being sent to Clinton, Haymes found himself several hundred miles away from his home and family in Buffalo, New York. Not only was he effectively separated by the transfer from his only contact with the world outside the prison, but he also was removed from the friends he had made among the inmates at Attica and forced to adjust to a new environment where he may well have been regarded as a troublemaker. Contacts with counsel would necessarily have been more difficult. 505 F.2d at 981–82. This line of reasoning was noted by the Supreme Court in its review of the Second Circuit's decision and was rejected. *See* 96 S.Ct. 2546–47 and n. 4.

Parole rather than the United States Board of Parole, which is governed by a different set of standards. The fact that a D.C.Code offender is subject to initial incarceration either in federal or in D.C. prison facilities undermines any argument that such offenders have a "justifiable expectation" that they will be considered for parole by the D.C. Board rather than the U.S. Board. Furthermore, as the Court noted in *Meachum*, "[t]he granting of parole has itself not yet been deemed a function to which due process requirements are applicable." 96 S.Ct. at 2540 n. 8.[11]

■■■ With respect to work-release, furlough and good-time credit, it appears that prisoners at Lorton are not treated differently from federal prisoners, at least to any significant extent. Like prisoners at Lorton, federal prisoners are allowed to earn good-time credits. 18 U.S.C. § 4161. And plaintiffs admit that furloughs and work-release in both federal and D.C. prison facilities are governed by the same statute, 18 U.S.C. § 4082. Plaintiffs object that, in a federal prison as opposed to Lorton, furloughs are impracticable for them because federal prisons require inmates to pay transportation costs which they, as indigents, cannot afford. However, as with plaintiffs' first and sixth amendment claims, the mere fact that the exercise of rights has been made more difficult by transfer from one prison to another does not, under the rationale of *Meachum* and *Montanye*, give rise to the protections of the due process clause.

■■■■■ Plaintiffs' final arguments—that transfers inflict a stigma which will harm future efforts to obtain parole and that the transfers amount to cruel and unusual punishment—are without merit and may be easily dismissed. The first of these arguments was considered by the Court in *Meachum* and clearly rejected: "Nor do we think the situation is substantially different because a record will be made of the transfer and the reasons which underlay it, thus perhaps affecting the future conditions of confinement, including the possibilities of parole." 96 S.Ct. at 2540 n. 8. With respect to the second argument, there can be little doubt that a transfer from one prison facility to another, no matter how precipitously it may have occurred, is not so out of line with contemporary notions of decency as to be prohibited by the eighth amendment. The mere fact that one of the plaintiffs apparently suffered an asthmatic reaction to this transfer does not necessarily suggest that the procedure itself was cruel and unusual.

An appropriate Order accompanies this Memorandum Opinion.

## ORDER

This matter came before the court on defendants' motion to dismiss. After consideration of the motion, memoranda submitted in support thereof and in opposition thereto, oral argument thereon, and the entire record herein, and for the reasons set forth in the accompanying memorandum opinion, the court is of the opinion that dismissal is required by the recent decisions of the Supreme Court in *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), and *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). Therefore, it is, by the court, this 4th day of November, 1976,

ORDERED that defendants' motion to dismiss be, and the same hereby is, granted; and it is further

ORDERED that this action be, and the same hereby is, dismissed.

11. *See also Montanye v. Haymes*, 96 S.Ct. 2546–47 and n. 4.