**Abdus Shahid M.S. ALI, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civ. A. No. 89–2863 (CRR).**

United States District Court, District of Columbia.

Aug. 14, 1990.

Abdus Shahid M.S. Ali, pro se.

Richard N. Reback, Asst. U.S. Atty., Jay B. Stephens, U.S. Atty., and John D. Bates, Asst. U.S. Atty., Washington, D.C., for Federal defendants.

Robert P. Owens, Asst. Corp. Counsel, Herbert O. Reid, Corp. Counsel, Michael Zielinski, Asst. Deputy Corp. Counsel, and Richard S. Love, Asst. Corp. Counsel, Washington, D.C., for District of Columbia defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

The plaintiff, convicted of first-degree murder under the District of Columbia ("D.C.") Code, brings this *pro se* damages action under 42 U.S.C. § 1983 and also seeks a writ of mandamus. He contends that the federal and the D.C. defendants violated his first amendment and due process rights by transferring him, for allegedly punitive reasons, from the D.C. Department of Corrections Facility in Lorton, Virginia to the Federal Correctional Institution in Lompoc, California. The defendants have filed summary judgment motions, and the plaintiff has filed a cross-motion for summary judgment. Upon consideration of the parties' submissions, the entire record herein, and the underlying law, the Court will grant summary judgment for the defendants because there are no material facts in dispute and because, as a matter of law, the plaintiff—once legally convicted—had no constitutionally protected right to incarceration in any particular facility.

The plaintiff complains that the defendants' decision to transfer him across the country violated his due process and first amendment rights in that the transfer unduly impairs: (1) his access to the courts to continue litigating various lawsuits pending here; (2) the practice of his religion (Muslim); (3) the ability of his mother to visit him in prison; and (4) the completion of his studies in a program sponsored by the University of the District of Columbia. While the Court is sympathetic to the plaintiff's distress over the disruption created by his transfer to California, the Court

sees no reason on this record to intrude into the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *see also Phillips v. Bureau of Prisons,* 591 F.2d 966, 972 (D.C.Cir.1979) ("[b]ecause the realities of running a penal institution are complex and difficult, we have ... recognized the wide-ranging deference to be accorded the decisions of prison administrators" (quoting *Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 126, 97 S.Ct. 2532, 2538, 53 L.Ed.2d 629 (1977))).

The linchpin of the plaintiff's argument—that he has a constitutionally protected right to incarceration in any one particular facility—does not survive scrutiny under controlling Supreme Court precedents. For example, in *Meachum* the Court held that, in the absence of a specific right conferred by state law, a prisoner may be transferred from one state prison to another prison within the same state without violating the Due Process Clause. The *Meachum* Court noted:

> [G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution. The Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison.... The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause.... The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons.

*Id.* at 224, 97 S.Ct. at 2538 (emphasis in original); *see also Montanye v. Haymes,* 427 U.S. 236, 243–44, 96 S.Ct. 2543, 2547–48, 49 L.Ed.2d 466 (1976) (because state law imposes no conditions on discretionary power to transfer, intrastate transfer of an inmate from one prison to another without a hearing does not violate due process).

Similarly, and equally important for the purposes of resolving this case, the Supreme Court has explicitly extended the scope of its *Meachum* and *Montanye* holdings to include *inter*state transfers. In *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), the Court held that "an interstate prison transfer, *including one from Hawaii to California,* does not deprive an inmate of any liberty interest protected by the Due Process Clause in and of itself," *id.* at 248, 103 S.Ct. at 1747 (emphasis added), and that, because Hawaii's prison regulations gave the prison administrator unfettered discretion to transfer inmates, they also did not create a protected liberty interest, *id.* at 249–51, 103 S.Ct. at 1747–49. In addition, the *Olim* Court stated:

> Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State. Often, confinement in the inmate's home State will not be possible....
>
> ....
>
> In short, it is neither unreasonable nor unusual for an inmate to serve practically his entire sentence in a State other than the one in which he was convicted and sentenced, or to be transferred to an out-of-state prison after serving a portion of his sentence in his home State. Confinement in another State ... is "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum,* 427 U.S. at 225 [96 S.Ct. at 2538]. *Even when, as here, the transfer involves long distances and an ocean crossing, the confinement remains within constitutional limits.*

*Olim,* 461 U.S. at 245–47, 103 S.Ct. at 1745–46 (emphasis added; footnotes omitted).

█ If a state's decision to transfer an inmate from Hawaii to California does not violate due process, then *a fortiori* the

defendants' decision to transfer this plaintiff from Lorton, Virginia to California also does not violate due process. Here, the plaintiff had no right, and therefore no liberty interest under the Due Process Clause, to be assigned to Lorton in the first instance. Nor is there a "state" law or regulation that creates in D.C.Code offenders a justifiable expectation that they will serve out their prison sentences in a D.C. Department of Corrections facility. On the contrary, persons convicted under the D.C. Code

> shall be committed ... to the custody of the Attorney General of the United States ..., who shall designate the places of confinement where the sentences of all such persons shall be served. The Attorney General may designate *any* available, suitable, and appropriate institutions, *whether maintained by the District of Columbia government, the federal government, or otherwise, or whether within or without the District of Columbia.* The Attorney General is also authorized to order the transfer of *any* such person from one institution to another if, *in his judgment,* it shall be for the well-being of the prisoner or relieve overcrowding or unhealthful conditions in the institution where such prisoner is confined, *or for other reasons.*

D.C.Code Ann. § 24–425 (emphasis added). In other words, the Attorney General has unfettered discretion to determine where D.C.Code offenders serve their prison sentences and to decide whether and where to transfer them. *See, e.g., Smith v. Saxbe,* 562 F.2d 729, 735 (D.C.Cir.1977); *Curry–Bey v. Jackson,* 422 F.Supp. 926, 932 (D.D.C.1976).

The D.C. prison system's tremendous overcrowding problems are well-known to this Court and have spawned much litigation—and several population caps. The federal defendants have submitted a declaration indicating that the federal Bureau of Prisons currently has about 1,900 D.C.Code offenders incarcerated in its facilities and that the plaintiff was one of many prison-

ers transferred from the D.C. prison system to the federal system to free up room in the local prisons. *See* Dorworth Declaration ¶ 3. Moreover, the declaration states that the plaintiff's designation to Lompoc "was based upon objective criteria including sentence length, history and violence and severity of the current offense." *Id.* ¶ 4. Also, the DC defendants—who made the initial selection of inmates to be transferred—have declared that the plaintiff was transferred solely for administrative reasons and because he satisfied their objective criteria for determining transfer eligibility. *See* Showell Declaration ¶¶ 3, 6–9. In light of local prison system's overcrowding problems and the unfettered discretion committed to the Attorney General and his representatives to decide where to incarcerate D.C.Code offenders, the Court declines to second-guess the defendants' decision to transfer the plaintiff to California. *See, e.g., Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 1878, 104 L.Ed.2d 459 (1989) ("Acknowledging the expertise of [prison] officials and that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators ..."); *Inmates of Occoquan v. Barry,* 844 F.2d 828, 836 (D.C.Cir.1988) ("[c]ourts must and do recognize the primacy of the legislative and executive authorities in the administration of prisons" (quoting *Rhodes v. Chapman,* 452 U.S. 337, 362, 101 S.Ct. 2392, 2407, 69 L.Ed.2d 59 (1981) (Brennan, J., concurring)).

In any event, even assuming for the sake of argument, that the defendants' decision to transfer the plaintiff was the result of improper retaliatory motives, the Court holds that the plaintiff's constitutional rights have not been violated. The Constitution and in particular the first amendment rights at issue here—the right to practice one's religion within certain limits and the right of meaningful access to the courts—apply with equal force in Lompoc, California as in the Lorton facility.[1] The

---

1. The Court recognizes that the plaintiff also     complains about no longer being able to visit

plaintiff has not demonstrated that his transfer to Lompoc necessarily impairs these first amendment rights. For example, while Lompoc may have a smaller Muslim population than the Lorton facility, inmates in both prisons have the right to reasonable opportunities to exercise their religious freedom. *See, e.g., O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Similarly, although the transfer means that the distance now is much greater between the plaintiff and the courts in which he is litigating, the plaintiff has the same constitutional right of meaningful access to courts. *See, e.g., Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).[2] Moreover, if some practice or policy at Lompoc were to violate the plaintiff's constitutional rights, the plaintiff may challenge that particular practice directly in a separate lawsuit there rather than attacking it indirectly here by challenging a transfer decision committed to the unfettered discretion of the Attorney General and his representatives. *Cf. Starnes v. McGuire,* 512 F.2d 918, 929–932 (D.C.Cir. 1974) (en banc) (discussing factors to be considered by courts in determining whether a prisoner lawsuit should be transferred under 28 U.S.C. § 1404 and noting that in many cases litigation in district of plaintiff's place of incarceration, and not Washington, D.C., is appropriate).

For the foregoing reasons, the Court will deny the plaintiff's summary judgment motion and will grant summary judgment for the defendants. Also, the Court will deny the plaintiff's petition for a writ of mandamus because the plaintiff's transfer to a distant location is not one of those "extraordinary situations" warranting the "drastic" remedy of mandamus. *See, e.g.,*

*Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam).

The Court will issue an Order of even date herewith in accordance with the foregoing Memorandum Opinion.

with his mother and not being able to complete his studies in an educational program sponsored by the University of the District of Columbia. Although the plaintiff's negative reaction to these developments is understandable, they are burdens necessarily related to his incarceration. In any event, the termination of the plaintiff's studies and the sharp reduction in the number of face-to-face visits he will have with his mother—while unfortunate—do not rise to the level of constitutional violations. The plaintiff will simply have to make do with communicating with his mother through other means (and perhaps seeing her only occasionally) and with participating in whatever programs, if any, that the Lompoc facility has available for him.

2. As a practical matter, most *pro se* lawsuits brought by inmates throughout the country are litigated by mail and do not require the plaintiff's presence in court.