**Kevin J. LAMBERT, Petitioner,**

v.

**Michael J. SULLIVAN, Secretary Wisconsin Department of Corrections, and Ken Sondalle, Warden Fox Lake Correctional Institution, Respondents.**

No. 99–CV–113.

United States District Court,
E.D. Wisconsin.

Feb. 18, 1999.

Kevin J. Lambert, Fox Lake Correctional Institution, Fox Lake, WI, petitioner pro se.

## DECISION AND ORDER

RANDA, District Judge.

This matter comes before the Court on Kevin Lambert's ("Lambert") petition for a

writ of habeas corpus under 28 U.S.C. § 2241. A federal district court may deny a writ of habeas corpus outright, without a return from the respondent, when "it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. That is the case here. Lambert, an inmate at Wisconsin's Fox Lake Correctional Institution, challenges the legality of his pending transfer to a private correctional facility in either Texas or Tennessee. His arguments, based on both state law and federal constitutional law, are without merit.

### I

■■■ Lambert argues that his proposed transfer violates Wisconsin state law because, under that law, he was committed—and is entitled to remain committed—to the custody of the "Wisconsin State Prisons." He claims he was never committed to the custody of the so-called "Wisconsin Department of Corrections" ("DOC") and that any attempt by that entity to transfer him to a facility which is not a "Wisconsin State Prison" violates both his sentence and Wis.Stat. § 301.21(2m)(a).[1] Lambert's reliance upon an alleged distinction between the "Wisconsin State Prisons" and the "Wisconsin Department of Corrections," and the legal consequences which flow from the proposed distinction, is excessively literal and finds no support in the relevant statutes. The "Wisconsin State Prisons" are named "correctional institutions" by statute, Wis.Stat. § 302.01, and the DOC is given the authority to "maintain and govern the state correctional institutions." Wis.Stat. § 301.02. Moreover, it is well-established that violations of state law do not provide a basis for federal habeas relief. Such violations must be remedied, if at all, in the state courts. See, Stewart v. Lane, 60 F.3d 296, 302 (7th Cir.1995).

■■■ Lambert argues that the proposed transfer violates his state law right to be subject to the Wisconsin statutes, regulations and management policies governing the

1. Section 302.21(2m)(a) provides in pertinent part:

The department may enter into one or more contracts with a private person for the transfer and confinement in another state of prisoners who have been committed to the custody of the department.

W.S.A. § 302.21(2m)(a) (Supp.1998).

DOC. Again, the violation of rights created by state law is not a basis for federal habeas relief. Lambert suggests, however, a violation of his federal right to due process, claiming that he was not given notice prior to the commission of his underlying criminal offense that the possible penalties included his incarceration in an out-of-state, private facility. Lambert submits no authority for this proposition. Generally speaking, a criminal statute must give fair warning or notice of what it entails or prohibits, and any statute which fails in this regard is unconstitutionally vague for purposes of federal due process. Case law, however, focuses attention on whether a statute provides sufficient description of the *conduct prohibited*, not the penalty imposed. *See e.g., United States v. Pitera*, 795 F.Supp. 546, 554 (E.D.N.Y.1992) ("Generally, a vagueness challenge to a criminal statute invokes due process and focuses on the adequacy of notice to a defendant that certain conduct is prohibited."); *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1135 (3rd Cir.1992) (same); *Home Depot, Inc. v. Guste*, 773 F.2d 616, 627–28 (5th Cir.1985) (same); *but see also, United States v. Batchelder*, 442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) ("... sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute."). Even if a criminal statute must give fair warning of the penalties which attach, the particular correctional facility to which a criminal defendant is assigned post-conviction is not properly considered part of his statutory penalty for due process purposes.[2]

■ Lambert argues that he will be required to work at the private facility to which he is being transferred, and that such a requirement violates the Thirteenth Amendment's proscription against involuntary servitude. Not so. It is well-established that the forced labor of state convicts does not violate the Thirteenth Amendment, *see, Ray v. Mabry*, 556 F.2d 881, 882 (8th Cir.1977) and *Holt v. Sarver*, 309 F.Supp. 362, 365 (E.D.Ark.1970), and the same rule applies regardless of whether the convict is incarcerated in a public or private facility. *See,* Robbins, *The Legal Dimensions of Private Incarceration*, 38 Am.U.L.Rev. 531, 605–08 (1989) ("... it would seem irrelevant whether prisoners worked for publicly or privately owned facilities.").

■ Lambert argues that, while the DOC would be within its rights to transfer him to another public correctional facility, it is unconstitutional for the DOC to transfer him to an out-of-state, private facility. Again, Lambert cites no authority for this proposition, nor has the Court found any. As a general matter, a state prisoner has no federal constitutional right to serve his sentence in any particular place of confinement and has no federal constitutional basis upon which to object to a simple administrative transfer from one facility to another, even if the transferee facility is located in another state. *See e.g., Knecht v. Collins*, 903 F.Supp. 1193 (S.D.Ohio 1995); *Ali v. U.S.*, 743 F.Supp. 50 (D.D.C.1990); *Kivela v. United States Attorney General*, 523 F.Supp. 1321 (S.D.N.Y. 1981). Simply put, federal constitutional guarantees, such as the right to due process, are not implicated by such transfers:

> The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons.
>
> Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.

---

2. Lambert also seems to argue that the proposed transfer violates his federal equal protection rights because incarceration in a privately-run facility is more punitive than incarceration in a state-run facility. Lambert provides no specifics in this regard. More importantly, there is no allegation that Lambert is a member of a protected or suspect class within the general prison population, or that members of such a class to which he belongs are being transferred in numbers disproportionate to their representation in the general prison population. As such, Lambert's transfer need only be rationally related to a legitimate penological interest, and prison overcrowding is one such interest.

*Meachum v. Fano,* 427 U.S. 215, 224–25, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).

> Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State. Often, confinement in the inmate's home State will not be possible. A person convicted of a federal crime in a State without a federal correctional facility usually will serve his sentence in another State. Overcrowding and the need to separate particular prisoners may necessitate interstate transfers. For any number of reasons, a State may lack prison facilities capable of providing appropriate correctional programs for all offenders.

*Olim v. Wakinekona,* 461 U.S. 238, 245–46, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983).

Furthermore, the Supreme Court's decision in *Richardson v. McKnight,* 521 U.S. 399, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997), implies that a state may constitutionally contract with a private entity to either manage its prison system or to privately incarcerate individuals convicted under its criminal statutes. Admittedly, *Richardson* only dealt with the question whether private prison employees are entitled to qualified immunity against § 1983 claims, but it would strike the Court as odd for the Supreme Court to reach that issue if it harbored any doubts about the constitutionality of private incarceration. This conclusion gains additional strength from *Richardson's* discussion of the long history of privately-managed correctional services in this country. *Id.* 521 U.S. 399, 117 S.Ct. at 2104–2105 ("But correctional functions have never been exclusively public. Private individuals operated local jails in the 18th century, and private contractors were heavily involved in prison management during the 19th century.") (citations omitted). While some suggest that a particular state's delegation of correctional functions to a private firm or entity is subject to certain limits, and may even be unwise, there is little to no authority for the proposition that it is unconstitutional. *See,* Robbins, 38 Am.U.L.Rev. at 557–77. Here, Lambert does not elaborate on how Wisconsin's delegation statute— W.S.A. § 301.21(2m)(a) (Supp.1998)—or its

particular contract with Corrections Corporation of America runs afoul of any specific federal limit on a state's delegation power.

■ Finally, Lambert argues that it is unconstitutional for Wisconsin to extend its sovereignty and jurisdiction beyond its physical borders in this manner. This is not an accurate characterization of Lambert's transfer to a private correctional facility in another state. Wisconsin is simply contracting with an out-of-state entity—here, a private entity—to house some of its inmates. Such compacts are not matters of federal concern because they do not increase a state's political powers at the expense of federal supremacy. *See, Ghana v. Pearce,* 159 F.3d 1206, 1208 (9th Cir.1998); *Stewart v. McManus,* 924 F.2d 138, 142 (8th Cir.1991); *Clemmons v. Read,* 1996 WL 164408 *2–3 (N.D.Ill.1996). Not being a matter of federal concern, it is not a matter for federal habeas relief.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Lambert's petition for a writ of habeas corpus is denied;

2. Lambert's motions for injunctive relief are denied as moot; and

3. The case is dismissed.

**SO ORDERED,**