**Victor B. BERDINE, Plaintiff,**

v.

**Michael J. SULLIVAN, et al., Defendants.**

**No. 01–CV–0019.**

United States District Court, E.D. Wisconsin.

Aug. 29, 2001.

Victor Berdine, Fox Lake Correctional Institution, Fox Lake, WI, pro se.

## DECISION AND ORDER

RANDA, District Judge.

Victor B. Berdine ("Berdine") is a Wisconsin prisoner incarcerated at a private, out-of-state correctional facility pursuant to Wis.Stat. § 301.21. In this *pro se* action under 42 U.S.C. § 1983 ("Section 1983"), Berdine maintains that his transfer to the out-of-state facility (his second such transfer) violates due process and constitutes cruel and punishment forbidden by the Eighth Amendment. As explained below, the Court dismisses Berdine's complaint pursuant to 28 U.S.C. § 1915(e)(2) because it fails to state a claim upon which relief may be granted.

## BACKGROUND

Berdine is serving a lengthy sentence pursuant to convictions in Wisconsin for first and second-degree sexual assault. At present he is confined in the Whiteville Correctional Facility ("WCF") in Whiteville, Tennessee. WCF is a contract facility administered by the Corrections Corporation of America ("CCA"). It appears that Berdine was initially confined at the Oshkosh Correctional Facility ("OCF") here in Wisconsin and then transferred to a contract facility in Texas in 1997, pursuant to Wis.Stat. § 301.21. Subsequently, Berdine was returned to Wisconsin and, in 1998, transferred out-of-state a *second* time, this time to WCF in Tennessee. Berdine and his family members are unhappy about the transfers. They have protested to prison officials, members of the Wisconsin legislature, and the state courts. In this lawsuit, as far as the Court is able to determine from his somewhat lengthy and disjointed complaint, Berdine essentially makes two constitutional claims. The first is that transfer to an out-of-state facility violates the due process guarantee of the Constitution. The second is that the transfers in his case amount to cruel and unusual punishment, principally because they have caused "suffering and hardships due to loss of visitation of family." Pursuant to Section 1983, Berdine seeks compensatory and punitive damages for what he describes as the defendants' "callous indifference" to his constitutional rights. The Court has previously assessed—and Berdine has paid—the initial partial filing fee required by the Prison Litigation Reform Act ("PLRA").

## DISCUSSION

Notwithstanding any filing fee, or any portion thereof, that may have been paid, this Court is required to dismiss an action if, at any time, it appears that the action is "frivolous" or "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(i)–(ii). Dismissal is appropriate here because, even when Berdine's complaint is liberally construed, it fails to state a claim upon which relief may be granted.

### I. *Due Process*

 In order to establish a due process violation, Berdine must first demonstrate that he has a constitutionally protected liberty interest (paradoxical as that may sound) in remaining incarcerated in Wisconsin. However, as this Court observed not long ago, in a similar case:

> As a general matter, a state prisoner has no federal constitutional right to serve his sentence in any particular place of confinement and has no federal constitutional basis upon which to object to a simple administrative transfer from one facility to another, even if the transferee facility is located in another state. Simply put, federal constitutional guarantees are not implicated by such transfers.

*Lambert v. Sullivan,* 35 F.Supp.2d 1131, 1134 (E.D.Wis.1999); *see also Evers v. Sullivan,* 237 Wis.2d 759, 615 N.W.2d 680 (2000). Likewise, there is no reason to doubt the constitutionality of Wisconsin's contract with CCA. *Lambert,* 35 F.Supp.2d at 1134. To summarize, a prisoner has no liberty interest in avoiding transfer to another prison, be it out-of-state, more restrictive, or owned and run by a private corporation. *See Olim v. Wakinekona,* 461 U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Meachum v. Fano,* 427 U.S. 215, 223–24, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Moran v. Sondalle,* 218 F.3d 647, 651 (7th Cir.2000); *Stanley v. Litscher,* 213 F.3d 340, 343 (7th Cir. 2000); *Pischke v. Litscher,* 178 F.3d 497, 500 (7th Cir.1999). Berdine's due process claim is not cognizable, and may even be frivolous. *Moran,* 218 F.3d at 651.

### II. *Eighth Amendment*

 The Eighth Amendment's prohibition against cruel and unusual punishment extends to punishments that are "grossly disproportionate to the severity of the crime" or "involve the unnecessary and wanton infliction of pain." *James v. Milwaukee County,* 956 F.2d 696, 699 (7th Cir.1992) (quotations omitted). Thus, "prison conditions involving the wanton and unnecessary infliction of pain, totally without penological justification, offend the constitution." *Id.* However, not all unpleasant prison conditions trigger Eighth Amendment scrutiny. Rather, only deprivations of "basic human needs like food, medical care,[1] sanitation and physical safety" raise a constitutional eyebrow. *Id.*

 Berdine claims that his transfer to WCF effectively deprives him of visitation privileges and thus constitutes cruel and unusual punishment. The sole support for his claim is *Laaman v. Helgemoe,* 437 F.Supp. 269, 320 (D.N.H.1977), in which the district judge opined that unreasonable restrictions on visitation "involved" the Eighth Amendment because they served to weaken family and community bonds, which in turn "promot[ed] degeneration and decrease[d] [an inmate's] chances of successful integration into society." According to *dicta* in the *Laaman* decision, a "total denial of visits" would violate the Eighth Amendment. *Id.* at 322. With respect to lesser· deprivations, however,

---

1. Berdine's complaint includes a list of case synopses under the heading "Eighth U.S. Const.Amend. on Medical Care." However, there is no particularized claim that Berdine has been denied needed medical care, or that the defendants (or CCA) have shown "deliberate indifference to a serious medical need." *See Zentmyer v. Kendall County,* 220 F.3d 805, 810 (7th Cir.2000) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The case synopses having to do with medical care, like those addressing equal protection of the law, "access to legal materials," and "personal hygiene of inmates" are not sufficiently tied to any factual allegation in the complaint to state a claim upon which relief may be granted.

the Court in *Laaman* acknowledged that "it is only when the probable consequences of the strictures on visitation far surpass the necessary discomforts in prison life that the discretion [allowed prison officials] is overcome and the Eighth Amendment comes into play." *Id.* at 321. The *Laaman* court did not have occasion to decide whether restrictions on visitation that occurred as a result of out-of-state transfers implicated the Eighth Amendment.[2]

In this age of reasonably affordable (and speedy) interstate travel, the Court has to assume that Berdine's exile in Tennessee, even if it lasts until his mandatory release date in the year 2041, does not represent a "total" denial of visitation privileges. Moreover, while it can sometimes be difficult for a court to ascertain where the "necessary discomforts" of prison life end and "cruel and unusual punishment" begins, Berdine has failed to allege facts that even come close to the line (*e.g.*, a serious medical condition or special family circumstances warranting exemption from transfer). Because Berdine is a violent felon, and the restrictions on his visitation privileges are less than total, he has not alleged punishment that is "grossly disproportionate." At some point, perhaps, a prisoner's transfers could reach such a high number that they would violate the prohibition against cruel and unusual punishment. However, Berdine has only been transferred out-of-state twice. The decision to incarcerate him in Tennessee, with its attendant loss of visitation privileges, is not unreasonable and certainly not "wanton," "unnecessary," or "totally without penological justification." *James*, 956 F.2d at 699. To the contrary, such transfers are necessitated by prison overcrowding (a problem, ironically, that raises its own Eighth Amendment concerns). Whether out-of-state transfers are, in the long run, counterproductive, is a question of social policy and not constitutional law.

In short, although Berdine is clearly unhappy about being transferred a second time, and understandably wishes to be geographically closer to his family, he has failed to state a claim under the Eighth Amendment.

NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:

1. Berdine's complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2).

---

2. Likewise, out-of-state transfers were not at issue in *Smith v. Godinez,* 1993 WL 135450 (N.D.Ill.1993). The *Godinez* opinion states that "visitation privileges are not a constitutional right." *Id.* at *4. However, a footnote to the *Godinez* opinion speculates (building on the *dicta* in *Laaman,* discussed above) that the deprivation of visitation privileges over an "extended period of time" could implicate the Eighth Amendment, if, "combined with other circumstances of incarceration," the loss of visits actually "threaten[ed] the mental and emotional stability of inmates." *Id.* at * 6.