**Annie Ruth ROSS, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**Annie May LORICK, et al., Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civ. A. Nos. 86–0857, 86–0858.**

United States District Court, District of Columbia.

July 25, 1986.

Ronald L. Drake, Washington, D.C., for plaintiffs.

John M. Facciola, Asst. U.S. Atty., Washington, D.C., for defendants U.S.A. and Carlson.

Beverly Lewis, Asst. Corp. Counsel, D.C., Washington, D.C., for defendants Barry and Palmer.

## MEMORANDUM

GASCH, Senior District Judge.

### I. BACKGROUND

This case stems from the murders of two District of Columbia ("D.C.") criminal offenders at the hands of other prisoners in two separate incidents at the United States Prison at Marion, Illinois ("USP–Marion"). The complaints state that prisoner James Anthony Rice died on September 11, 1985, after being beaten and stomped upon by a group of fellow inmates, and that prisoner James Robert Lorick died on June 5, 1985, after being stabbed by a fellow inmate. His attacker wielded a long knife fashioned from a ladle stolen from the prison kitchen and, according to the complaint, apparently hidden for over a year. The attack followed by one day a violent and public dispute between Mr. Lorick and his attacker, but prison authorities allegedly made no note of it nor took any action to prevent the two from having further contact. The parents of both inmates, personally and as the personal representatives of their estates, brought wrongful death and survivor actions against the U.S. Bureau of Prisons, its director Norman Carlson, the District of Columbia, Mayor Marion Barry and the District of Columbia Director of Corrections, James F. Palmer, raising common law tort claims as well as Federal Tort Claims and claims asserting violation of the decedents' constitutional rights.

USP–Marion houses the federal system's most intractable inmates, and conditions there have been the subject of close oversight by the Bureau of Prisons and Congress. It has been on permanent "lockdown" since October, 1983, because of the murder of two guards. The lockdown involves frequent strip searches and rectal examinations, the requirement that prisoners wear leg irons and handcuffs when moving outside their cellblocks, and other extreme measures. *See Bruscino v. Carlson,* No. CV84–4320, Memorandum of Magis. Kenneth J. Meyers (S.D.Ill. Aug. 15, 1985). As a result of these restrictive measures, consultants hired by the House Judiciary Committee reported "that the present and immediate future at Marion holds serious risks for injury or worse for inmates and officers." *The United States Penitentiary, Marion Illinois, Consultants' Report,* submitted to Committee on the Judiciary, House of Representatives, 98th Cong., 2d Sess., Dec. 1984, at 19.

In their complaints, plaintiffs allege that the Bureau of Prisons ("BOP") has created a special cadre of guards selected from other federal facilities, known as the "A–Team", to maintain order at Marion. This unit and groups of guards known as Special Operation Response Teams are alleged to frequently whip or beat prisoners. Plaintiffs also allege the guards have a policy of encouraging racial tension among the prisoners as a method of maintaining discipline and control. These practices, plaintiffs contend, have caused the level of inmate rage and violence to rise.

The defendants all filed motions to dismiss or for summary judgment based on a variety of legal theories. Because the motions in both cases raise identical issues, the cases were consolidated for consideration of pretrial matters. In considering these motions, this Court is held to a stringent standard: a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiffs can prove no set of facts that would entitle them to relief. In passing on the motion, the Court must for now accept as true the well-pleaded factual allegations contained in the complaints. *Phillips v. Bureau of Prisons,* 591 F.2d 966, 968–69 (D.C.Cir. 1979), and cases cited therein. With this in mind, the motions will be considered in turn.

### II. D.C. DEFENDANTS' MOTION TO DISMISS

In Counts VI, VII, VIII and IX of both complaints, plaintiffs seek to hold the Dis-

trict of columbia, Mayor Barry and Corrections Director Palmer (the D.C. defendants) liable for negligence, violation of decedents' civil rights, and intentional infliction of emotional distress. In order to understand these motions, it is necessary to review the "unique relationship" between the District of Columbia and the federal government in operating the District's penal system. *Milhouse v. Levi*, 548 F.2d 357, 360 (D.C.Cir.1976). By statute, the Attorney General of the United States has complete authority to designate the facility to which an offender convicted in a District of Columbia court will be sent. D.C.Code § 24–425. The Attorney General delegated part of this authority to local officials, permitting them to transfer inmates between facilities within the District of Columbia. 28 C.F.R.App. to Subpart Q, § 0.99 (1985). D.C. inmates may be transferred into the federal system at the request of D.C. officials. *See* D.C. Defendants' Reply to Plaintiffs' Opp., p. 2; D.C. Dept. of Corrections Order 4810.1A (May 2, 1980), D.C.Defs. Exh. I.

The federal government has a duty of care established in 18 U.S.C. § 4042 to exercise ordinary diligence to keep prisoners housed in federal facilities safe and free from harm. *United States v. Muniz*, 374 U.S. 150, 164–65, 83 S.Ct. 1850, 1858–59, 10 L.Ed.2d 805 (1963); *Cowart v. United States*, 617 F.2d 112, 116 (5th Cir.), *cert. denied*, 449 U.S. 903, 101 S.Ct. 275, 66 L.Ed.2d 134 (1980). Similarly, the District of Columbia owes a duty of care to inmates housed in D.C. facilities, such as Lorton Reformatory, under D.C.Code § 24–442. *Doe v. District of Columbia*, 697 F.2d 1115, 1117 & n. 1 (D.C.Cir.1983).

The motion by the D.C. defendants is based on this simple premise: once a D.C. offender is confined to a federal facility, the federal government and not the District of Columbia has the duty to safeguard the inmate. Therefore, their duty to decedents ended upon their transfer to USP–Marion.

Plaintiffs reply that D.C. Corrections officials have a "duty not to place or abandon [an inmate] in an inherently dangerous institution, known to pose a threat to life and limb." Pltfs.' Memorandum in Opposition to D.C.Defs.' Motion to Dismiss, p. 6. They further contend D.C. officials maintain a policy of operating D.C.'s own prisons in an overcrowded condition in violation of the Constitution, and a policy of using the threat of transfer to USP–Marion to impose discipline in D.C. facilities. As a result of those policies, plaintiffs allege decedents were transferred to a facility that D.C. officials knew or should have known was dangerous. Thus, plaintiffs' theory of liability rests on the D.C. defendants' role in the transfer of decedents to USP–Marion, and not on a duty owed to protect them while there.

Defendants argue that District of Columbia officials may never be liable for injuries suffered by a D.C. inmate due to transfer from a D.C. facility. They rely on *District of Columbia v. Cooper*, 483 A.2d 317 (D.C. App.1984). Cooper was shot by another inmate at a D.C. prison, and thereafter was transferred to a federal facility at Terre Haute, Indiana, to protect him from his assailant. He sued to recover, *inter alia*, for psychological damages he suffered due to the transfer. The District of Columbia Court of Appeals held that Cooper could not recover on that basis:

> Cooper had no legally recognized interest in remaining at Lorton Reformatory. Under D.C.Code § 24–425 (1981), persons convicted of crimes in the District of Columbia are committed to the custody of the Attorney General, who may "order the transfer of any such person from one institution to another if in his judgment, it shall be for the well-being of the prisoner or relieve overcrowding or unhealthful conditions in the institution where such prisoner is confined, or for other reasons." This authority is "clear and apparently limitless." *Curry-Bey v. Jackson*, 422 F.Supp. 926, 932 (D.D.C. 1976). Obviously, as long as section 24–425 is in the Code, a District of Columbia prisoner can have no legitimate expectation that he will remain at Lorton throughout his term. Without such an

expectation, a prisoner has no interest protected by the Due Process Clause from summary deprivation. Thus the courts have held that a District of Columbia prisoner has no due process right to a hearing before being transferred to another prison. Since a prisoner's interest in remaining at Lorton is not even protected against intentional invasion, *a fortiori* the law will not protect it from negligent invasion....

[T]he District owed Cooper no duty to keep him at Lorton, and thus it could not be liable in damages for any injuries resulting from his transfer to Terre Haute.

*Id.* at 322 (citations omitted).

*Cooper* may be distinguished as applied to the allegations in the case before this Court. In *Cooper*, the inmate's psychological injuries stemmed from being moved *away* from the District and his family. *Id.* at 320. The destination was irrelevant. Given the court's finding that he had no legally protected interest in remaining at Lorton, he could not recover for those injuries. In *Ross* and *Lorick*, however, the allegations rest on the choice of USP–Marion as the destination for the inmates, and not on transfer in general. It does not necessarily follow that, because officials have broad discretion to transfer an inmate without a hearing, they may never be held liable for that transfer.

■ Thus, a claim for negligent transfer may be envisioned in the proper case. This, however, is not that case. Facts adduced at oral argument and confirmed in subsequent filings by plaintiffs show that decedent Lorick was transferred into the federal system at the request of D.C. officials after he seized hostages in an escape attempt from Lorton. However, D.C. officials did not request that he be transferred to any particular federal prison. *See* Letter to George L. Diffenbaucher from James W. Freeman, March 3, 1983 (filed July 17, 1986). Furthermore, the decision to request transfer for Mr. Lorick was reasonable and in accordance with established procedures, given the violence connected

with his attempted escape. *See* Dept. of Corrections Order 4810.1A *supra*, p. 2 (listing criteria for transfer). Decedent Rice was ordered placed in the federal system by the judge who sentenced him in 1973. D.C.Defs.Exh. A. He was incarcerated at the federal prison in Leavenworth, Kansas just prior to transfer to USP–Marion. These facts show that D.C. officials had nothing to do with the choice of USP–Marion in either case. Therefore, in light of the Court's authority under Fed.R.Civ.P. 12(b)(6) to treat a motion to dismiss for failure to state a claim as one for summary judgment where matters extrinsic to the pleadings are before the Court, the Court will enter summary judgment in favor of the D.C. defendants.

## III. DEFENDANT CARLSON'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Defendant Norman Carlson, director of the U.S. Bureau of Prisons, moves to dismiss or for summary judgment on the identical counts asserted against him in both the *Ross* and *Lorick* complaints. In Count IV, plaintiffs seek to hold Director Carlson liable for tortious invasion of decedents' constitutional rights under the fifth and eighth amendments. *See Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In Count IX, they seek to hold Mr. Carlson Liable for intentional infliction of emotional distress.

By affidavit, Mr. Carlson states that he had "only the most general involvement in the managerial decisions affecting confinement" of decedents, and that he performed no "overt act contributing to any of the matters" of which plaintiffs complain. Carlson Aff., June 6, 1986 ¶ 4. In their opposition, plaintiffs submit a number of affidavits and reports from experts, most of which are part of the record in *Bruscino, supra*, and were prepared prior to the murders of Mr. Rice and Mr. Lorick. They are offered to show that Mr. Carlson had reason to know that the severely restrictive conditions at USP–Marion would result in

deaths there. *See, e.g.,* Aff. of Frank Rundle, Pltfs.Exh. B, Oct. 11, 1984, p. 2 (predicts "destruction of life and property" at Marion); Aff. of Joseph G. Cannon, Pltfs. Exh. C, Oct. 12, 1984, p. 1 (violence will follow if policies continued).

Plaintiffs also offer the affidavit of Cherry Gillis, a congressional aide to D.C.Del. Walter Fauntroy, who investigated conditions at USP–Marion as part of her job. She states that she wrote Mr. Carlson expressly to convey the fears of inmates at USP–Marion who reported to her that their lives were threatened by members of prison gangs known as the Aryan Brotherhood and the Mexican Mafia. Ms. Gillis states that Mr. Carlson replied that he found no evidence of such threats. Gillis Aff., Pltfs. Exh. A, June 19, 1986, ¶¶ 2–3. Her affidavit does not state that the information she conveyed involved Mr. Rice and Mr. Lorick in particular. The plaintiffs did not submit copies of the correspondence.

The Court notes additionally that in a copy of the report in *Bruscino, supra,* Finding ¶ 18, submitted by defendant, the magistrate found that the director of BOP had been continuously monitoring conditions at USP–Marion since October, 1983.

### A. *Constitutional Tort Claims*

Mr. Carlson moves to dismiss or for summary judgment on Count IV, plaintiffs' constitutional tort claims, on the grounds that plaintiffs failed to allege specific facts linking any deliberate indifference on the part of Mr. Carlson to the murders of Mr. Lorick and Mr. Rice, and that federal prison officials enjoy qualified immunity to *Bivens*-type claims. *Procunier v. Navarette,* 434 U.S. 555, 561, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978); *Carlson v. Green,* 446 U.S. 14, 19, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980).

■ As announced in *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." There is no dispute here that defendant was performing discretionary functions in connection with his executive duties. Thus, to qualify for immunity, Mr. Carlson must demonstrate either that the decedents' constitutional rights were not clearly violated, or that he objectively and in good faith did not know his conduct violated those rights. *Procunier, supra,* 434 U.S. at 562, 98 S.Ct. at 859, as modified by *Harlow, supra,* 457 U.S. at 818, 102 S.Ct. at 2738. It is clearly established that a jail official's deliberate indifference to the safety of an inmate may violate the inmate's eighth amendment rights. *See, e.g., Miller v. Solem,* 728 F.2d 1020, 1024 (8th Cir.), *cert. denied,* 469 U.S. 841, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984), and cases cited therein. This Court may determine whether an official enjoys immunity at the summary judgment stage even if the facts are in dispute, where, as here, the facts viewed in a light most favorable to plaintiffs fail to counter Mr. Carlson's claim of immunity. *Fludd v. United States Secret Service,* 771 F.2d 549, 554 (D.C.Cir.1985); *Hobson v. Wilson,* 737 F.2d 1, 20 (D.C.Cir.1984), *cert. denied sub nom. Brennan v. Hobson,* —— U.S. ——, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985).

■ In a recent suit brought under the Civil Rights Act, 42 U.S.C. § 1983, the Supreme Court held that an inmate who is attacked by a fellow prisoner must show prison officials were more than negligent in connection with the attack before he can establish that the officials violated his constitutional rights. *Davidson v. Cannon,* —— U.S. ——, 106 S.Ct. 668, 88 L.Ed.2d 677, 683 (1986). Plaintiffs must show the defendant was deliberately indifferent to decedents' safety, either because he intended to deprive Mr. Rice and Mr. Lorick of their constitutional rights, or because he acted with reckless disregard of decedents' right to be free from violent attacks while in prison. *Miller supra,* 728 F.2d at 1024. "Deliberate indifference" encompasses both recklessness or actual intent. *Id.* at 1024.

374

It is not sufficient for the complaint merely to incant "deliberate indifference." "There must be some indication that, if the matter proceeds beyond this threshold level, such allegations can be supported by specific facts...." *Jones v. Morris*, 777 F.2d 1277, 1280 n. 5 (7th Cir.1985). Reckless disregard is "demonstrated by facts showing that defendant[ ] [was] aware of the risk of ... attack but nevertheless failed to take appropriate steps to protect" decedents. *Miller, supra*, 728 F.2d at 1025, citing *Gullate v. Potts*, 654 F.2d 1007, 1012–13 (5th Cir.1981). Sweeping, conclusory allegations are insufficient. *Miller, supra*, 728 F.2d at 1025–26. Thus, knowingly exposing an inmate to violence would violate his constitutional rights, *Matzker v. Herr*, 748 F.2d 1142, 1149 (7th Cir.1984), but the inmate's claim must set out sufficient facts to establish acts of deliberate indifference. *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir.1985). *Cf. Hobson, supra*, 737 F.2d at 20 (particularity in pleading required in civil rights complaints where defendant asserts qualified immunity).

Plaintiffs' theory with regard to Mr. Carlson's alleged violations of decedents' constitutional rights may be summed up as follows: Mr. Carlson, in his capacity as ultimate overseer of the BOP's most troubled prison, instituted or approved policies that he should have known would lead to increased violence and deaths among the inmates at the prison; continuation of these policies amounts to callous disregard for the safety of inmates; these policies created the conditions that led to the deaths of Mr. Lorick and Mr. Rice; therefore Mr. Carlson is liable for those deaths.

■ Without condoning or condemning the BOP's maintenance of severe restrictions at USP–Marion, the Court finds the facts alleged in the complaints and plaintiffs' opposition do not establish Mr. Carlson's deliberate indifference to the particular plight of Mr. Rice and Mr. Lorick. When an inmate is attacked by a fellow prisoner, a prison official's liability for constitutional deprivation requires a showing of individual fault or intent, and not the generalized showing made by plaintiffs. *Cf. Williams v. Bennett*, 689 F.2d 1370, 1383 (11th Cir.1982), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983) (constitutional claim based on inmate's death involves proof of individual fault). Except for the Gillis affidavit, the facts marshalled by plaintiffs concern Mr. Carlson only in his general policy-setting role. Furthermore, viewing the facts stated in the Gillis affidavit in a light most favorable to plaintiffs, *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), the Court finds they do not show Mr. Carlson knew of threats aimed at decedents in particular or that he failed to act on those threats. Indeed, Ms. Gillis states that she "was informed by Mr. Carlson ... that he had found no evidence of such threats. In those letters Mr. Carlson promised to closely monitor the USP–Marion situation." This does not support a finding that defendant was deliberately indifferent to Ms. Gillis' report of threats.

The Supreme Court has recently stated that a district court, when considering a motion for summary judgment, may enter judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 2553, 81 L.Ed.2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In the case at bar, plaintiffs' failure to establish any facts demonstrating defendant Carlson's deliberate indifference, or the existence of a link between that indifference and the murders of Rice and Lorick, is fatal to their constitutional claims. They failed to demonstrate that his conduct violated decedents' constitutional rights and that in good faith he should have been aware that it did so. Therefore, defendant Carlson is entitled to summary judgment on the constitutional tort claim.

### B. *Count IX—Intentional Infliction of Emotional Distress*

In Count IX, plaintiffs assert that all defendants have "recklessly inflicted emotional distress on plaintiff[s] in allowing plaintiff[s]' decedent son[s] to be murdered through the negligence and reckless indifference" alleged earlier in the complaint. They further assert defendants inflicted emotional distress upon plaintiffs by failing to provide plaintiffs with full information concerning their sons' deaths, and in returning the bodies for burial without providing funds or assistance. Defendant Carlson moves for summary judgment on this count, *inter alia*, on the ground that he is absolutely immune to common law tort liability.

■ In *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), the Supreme Court established that executive branch officials are absolutely immune from liability for common law torts committed while acting "within the outer perimeter of [their] line of duty." *Id.* at 575, 79 S.Ct. at 1341. The continuing validity of the absolute immunity doctrine has been recognized in recent decisions in this circuit. *McSurely v. McClellan*, 753 F.2d 88, 114 (D.C.Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985); *McKinney v. Whitfield*, 736 F.2d 766, 769 (D.C.Cir.1984). The *McKinney* court listed a variety of torts to which the doctrine applied, and strongly indicated absolute immunity extended to all common law torts. *Id.* at 769. From this, the Court may conclude, as it did in *Yothers v. Baker*, No. 84–1928 (D.D.C. Sept. 26, 1985) [Available on WESTLAW, DCTU database], that absolute immunity protects federal officials sued for intentional or negligent infliction of emotional distress. *Id.*, slip op. at 6 n. 4. In the case at bar, there is no dispute that defendant Carlson was acting within the outer perimeter of his duties to oversee federal prison facilities. The Court therefore will grant his motion to dismiss the common law tort count against him.

### IV. U.S. GOVERNMENT'S MOTION TO DISMISS AND TRANSFER

The United States moves to dismiss Counts III, V and IX of plaintiffs' complaints and to transfer the remaining counts against it to the district court for the Southern District of Illinois, where UPS–Marion is located. Each of these motions will be considered in turn.

### A. *Motion to Dismiss Count III*

■ In Count III of both complaints, plaintiffs seek to hold the federal government strictly liable for "operating an inherently dangerous instrumentality," namely, USP–Marion. This count must be dismissed, as the government may not be held strictly liable under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 (FTCA). *Laird v. Nelms*, 406 U.S. 797, 803, 92 S.Ct. 1899, 1902, 32 L.Ed.2d 499 (1972).

Plaintiffs concede the state of the law, but respond that they merely misstated the standard of liability. "Plaintiffs' purpose in pleading this count was to place before the Court an allegation that this dangerous instrumentality had been created by the *negligence and wanton misconduct* of Government's agents." Pltfs.' Opp. to Government's motion to dismiss, p. 6 (emphasis added). Count III as currently phrased clearly asks that the government be held liable on a strict liability theory. As such, it must be dismissed. Even if the Court were to read the count as modified in plaintiffs' brief, it would merely restate Counts I and II which seek to hold the government liable under a negligence theory for the operation of USP–Marion.

### B. *Motion to Dismiss Count V*

In Count V of both complaints, plaintiffs seek to recover under the theory that decedents were third party beneficiaries of an implied contract between the federal government and the District of Columbia to house D.C. offenders. They would infer the existence of this contract from D.C. Code § 24–424, which states that the District shall reimburse the federal govern-

ment for the care and custody of D.C. convicts. The government moves to dismiss this count on the ground that under the Tucker Act, 28 U.S.C. § 1346(a)(2), this Court lacks jurisdiction over contractual claims for more than $10,000 against the government, and that it may not obtain jurisdiction over Tucker Act claims through pendent jurisdiction.[1] *McKay v. United States,* 703 F.2d 464, 469–70 (10th Cir. 1983).

■ Plaintiffs oppose the motion on two grounds: first, they assert the third party beneficiary claim is based on an implied-in-law contract, jurisdiction over which is not limited by the Tucker Act. *See Hatzlachh Supply Co. v. United States,* 444 U.S. 460 n. 5, 100 S.Ct. 647, 650 n. 5, 62 L.Ed.2d 614 (1980), and cases cited therein. Plaintiffs' reliance on the implied-in-law exception is misplaced. They appear to believe that because the contract is based on statute, it is "implied in law". However, an implied-in-law contract is a creature of the law of restitution, and not a contract at all. The courts treat an implied-in-law contract as if it were a real contract in order to prevent unjust enrichment. Restatement of Contracts 2d, § 4(a) and (b) (1981); Calamari & Perillo, *Contracts* § 1–12 (2d ed. 1977). Rather, if the statute relied upon creates any kind of contract, it is one implied in fact, *e.g.,* not an express contract but one to be inferred from the existence of the statute and the conduct of the parties. *Id.* Therefore, a claim by a third party beneficiary based on breach of the implied contract would be governed by the Tucker Act, and this Court lacks jurisdiction over such a claim. *See* Wright, Miller & Cooper, 17 Fed.Practice & Procedure § 4101 (1978).

■ Plaintiffs also argue that decedents' injuries were the result of *tortious* breach of the implied contract, and therefore this Court may exercise jurisdiction over the claim under the FTCA. The test of jurisdiction for a claim of tortious breach of contract against the United States is whether the claim is "essentially one sounding in tort" or whether it is a claim "essentially sounding in contract." *See Walsh v. United States,* 672 F.2d 746, 751 (9th Cir.1982), and cases cited therein; *H.H.O., Inc. v. United States,* 7 Cl.Ct. 703, 707 (1985). Where a claim contains elements of both contractual and tort relief, the party may elect whether to pursue a contract claim under the Tucker Act or a tort claim under the FTCA. *Walsh, supra,* 672 F.2d at 751; *Martin v. United States,* 649 F.2d 701, 704 (9th Cir.1981); *Aleutco Corp. v. United States,* 244 F.2d 674, 678–79 (3d Cir.1957); *Beauchamp v. United States,* 6 Cl.Ct. 400, 403 (1984).

■ Here, plaintiffs' Count V clearly states a claim based on contract, not tort. *See Ross* Complaint, ¶¶ 40–41; *Lorick* Complaint, ¶¶ 46–47. As plaintiffs have elected to base their claim on contract, jurisdiction is covered by the Tucker Act and may be found only in the Claims Court. Thus, Count V as framed must be dismissed. Plaintiffs may of course amend their complaints; however, a claim for tortious breach through negligent performance of an implied contract under the FTCA would appear merely to restate plaintiffs' negligence claims under Counts I–II.

### C. *Motion to Dismiss Count IX*

In Count IX, plaintiffs seek to recover for intentional infliction of emotional distress. The United States moves to dismiss on the grounds that (1) such a claim is not actionable under the FTCA and (2) plaintiffs have not alleged the kind of outrageous or uncivilized conduct on the part of defendants necessary to support such a claim.

---

1. In *Owens v. Haas,* 601 F.2d 1242, 1248–50 (2d Cir.), *cert. denied sub nom. County of Nassau v. Owens,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979), the second circuit recognized a claim for breach of contract brought by a prisoner as a third party beneficiary of a statutory and actual contract between the Bureau of Prisons and a county jail. There, however, the defendants were local officials, and not the United States, and so the court was not concerned with any questions concerning Tucker Act jurisdiction. *See also Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077, 1082 (3d Cir.1976).

The FTCA contains 13 exceptions to governmental tort liability. 28 U.S.C. § 2680(a–n). None of these expressly bar an action for intentional infliction of emotional distress. Several courts have recognized that such a claim may be barred, however, when the claim is one "arising out of" one of the excepted causes of action. For example, the Eleventh Circuit dismissed such a claim where it arose in connection with false arrest, because a claim for false arrest is barred by 28 U.S.C. § 2680(h). *Metz v. United States*, 788 F.2d 1528, 1534 (1986), and cases cited therein. Other courts take a narrow approach to construing FTCA exceptions, holding that any tort not expressly excepted in Section 2680 may be raised against the United States. *See Gross v. United States*, 676 F.2d 295, 304 (8th Cir.1982); *Black v. Sheraton Corp. of America*, 564 F.2d 531, 539–40 (D.C.Cir.1977).

 The cases that rely on the "arising out of" language of the exceptions to the FTCA are inapposite. Here, plaintiffs' intentional infliction claim arises out of another claim that is clearly allowable under the FTCA: the right to recover for injuries suffered by an inmate while incarcerated in a federal facility. *Muniz, supra*, 374 U.S. at 152. Because the claim for intentional infliction is neither expressly listed as an exception, nor arises out of the exceptions, it should be recognized under the FTCA to the extent that it is recognized by appropriate state law. 28 U.S.C. § 2674; *Muniz, supra*, 374 U.S. at 152; *Gross, supra*, 676 F.2d at 304.

Furthermore, the United States' contention that plaintiffs failed to demonstrate the kind of outrageous or uncivilized behavior required to support such a claim is not appropriately raised at this point in the proceedings. A motion to dismiss for failure to state a claim must be denied if plaintiffs could prove any set of facts to support their claim. *Doe v. United States*, 753 F.2d 1092, 1102 (D.C.Cir.1985). Therefore, it is too early to deny them the opportunity to do so. In sum, the federal government's motion to dismiss Count IX, as applied to it, will be denied.

### D. United States' Motion to Transfer

The United States contends any remaining counts against it should be transferred to the Southern District of Illinois, where USP–Marion is located, under 28 U.S.C. § 1404(a). That statute states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Defendant contends transfer is proper because plaintiffs' suit must focus on events and personnel at USP–Marion, and therefore, many of the witnesses are located there. Plaintiffs respond that they have limited financial resources and could not afford to prosecute their claims in Illinois, and that the attorney of their choice is not admitted in Illinois. They add that many of the witnesses on both sides are individuals who are not located in Illinois, including a warden, guards and inmates who have been transferred to other facilities.

 The Court's disposition of many of the claims asserted by plaintiffs has significantly altered the posture of this case. For example, much of the argument concerning the motion to transfer involved the propriety of severing the claims against defendant Carlson and the District of Columbia officials. As the Court has disposed of those claims, severance prior to transfer is no longer an issue. In addition, the disposition of these claims will affect the parties' choice of witnesses. A decision to transfer under Section 1404(a) must be based on the particular facts and circumstances of a case, and a defendant wishing to upset plaintiffs' choice of forum must demonstrate a need for transfer with particularity. *Securities and Exchange Comm. v. Savoy Industries, Inc.*, 587 F.2d 1149, 1154 (D.C.Cir.1978), *cert. denied sub nom. Zimmerman v. SEC*, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979). Therefore, the Court finds it best to reserve judgment on the transfer issue, and

to require the parties to submit names of potential witnesses and the location of potential evidence in order to aid the Court in ruling on this motion.

## V. CONCLUSION

For the reasons stated above, the Court will enter summary judgment for defendants District of Columbia, Mayor Barry and Director of Corrections Palmer on Counts VI, VII, VIII and IX in both cases. The Court will enter summary judgment for Director Carlson on Count IV, and will dismiss Count IX as asserted against Mr. Carlson. The Court will also dismiss Counts III and V against the United States. The Court will reserve acting on the motion to transfer the remaining claims asserted against the United States (Counts I, II, IX, X and XI) until the parties submit additional information concerning the location of potential witnesses and evidence.

### ORDER

Upon consideration of defendants' motions to dismiss, for summary judgment, and to transfer; plaintiffs' opposition thereto; oral argument in open Court; and the entire record herein, it is by the Court for the reasons stated in the accompanying memorandum this 26th day of July, 1986,

ORDERED that Count III of the complaint in both the above-captioned cases be, and hereby is, dismissed; and it is further

ORDERED that summary judgment be, and hereby is, entered for defendant Carlson in Count IV of both complaints; and it is further

ORDERED that Count V of both complaints be, and hereby is, dismissed; and it is further

ORDERED that summary judgment be, and hereby is, entered for defendants in Counts VI, VII, and VIII of both complaints; and it is further

ORDERED that summary judgment be, and hereby is, entered in favor of defendants District of Columbia, Barry, Palmer and Carlson in Count IX of both complaints; and it is further

ORDERED that the parties shall submit to the Court, no later than September 15, 1986, the identities and locations of *potential* witnesses and evidence relevant to all remaining counts, for the purposes of determining whether this case will be transferred to the Southern District of Illinois under 28 U.S.C. § 1404(a).