Richard JOYNER, Plaintiff,

v.

**DISTRICT OF COLUMBIA,**
**et al., Defendants.**

Civil Action No. 00–2006(RBW).

United States District Court,
District of Columbia.

June 2, 2003.

Elise A. Joyner, Washington, D.C., for Plaintiff.

Peter David Blumberg, U.S. Attorney's Office, Eugene A. Adams, III, George Edwin Rickman, Andrew Stewart Hoenig, Washington, DC, for Defendant.

### *MEMORANDUM OPINION*

WALTON, District Judge.

This matter comes before the Court on the Federal Defendant's Motion to Dismiss the Amended Complaint, or, in the Alternative, for Transfer ("Fed. Def.'s Mot.") and the District of Columbia's Motion for Judgment on the Pleadings and to Dismiss the Complaint ("D.C. Def.'s Mot."). The plaintiff, in both his individual and personal representative capacities, has asserted several claims against the defendants, including the deprivation of civil rights, negligence, and intentional infliction of emotional distress, arising from the death of his father while he was incarcerated at the

United States ("U.S.") Penitentiary at Lewisburg, Pennsylvania ("USP Lewisburg").[1] Upon consideration of these motions, and for the reasons set forth below, the Court will dismiss the District of Columbia ("D.C.") and its named officials as parties and transfer this case to the Middle District of Pennsylvania.

## I. *Factual Background*

The plaintiff is the son and personal representative of the estate of Frank Joyner, Jr., and has brought suit against D.C., the Federal Bureau of Prisons, and numerous individuals who were employed by these defendants.[2] In September 1976, Frank Joyner was sentenced in Superior Court of the District of Columbia ("Superior Court") to an aggregate term of incarceration of forty-five years on one count of rape and one count of sodomy, *see* Federal Defendants' Response to February 12, 2003 Order ("Fed. Def.'s Resp.") ¶ 1, and was originally incarcerated at the Lorton Reformatory ("Lorton"), *see* The Defendant District of Columbia's Supplemental Brief in Support of its Motion for Judgment on the Pleadings ("D.C.Supp.Brief") at 4. In February 1983, while at Lorton, Frank Joyner and several other inmates took several D.C. Department of Corrections staff members hostage. Fed. Def.'s Resp. ¶ 2. In March 1984, Frank Joyner was convicted in the United States District Court for the Eastern District of Virginia of one count of kidnaping and six counts of assault on a correctional officer with a deadly weapon. Joyner was sentenced to terms of incarceration of fifteen years on the kidnaping charge and five years each on the other counts, with these sentences designated to run concurrently, but con-

---

1. In addition, the Court notes that the plaintiff's amended complaint alleges that District of Columbia ("D.C.") officials engaged in "wrongful actions that took place against the deceased during his incarceration at Lorton...." Corrected Copy of Amended Complaint at ¶¶ 3–4. While neither party addresses this allegation in their summary judgment papers or in a motion to dismiss, if this is an attempt to assert a claim against D.C. officials for acts that purportedly occurred at Lorton, the Court finds it appropriate to either dismiss this claim under Federal Rule of Civil Procedure 12(b)(6) or grant summary judgment on such a claim against D.C. as a matter of law because, at best, it is a mere allegation. *See Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). As such, the claim, if it is being advanced, is not immune from dismissal or summary judgment, even though it has not been challenged by the D.C. defendants. *See Razzoli v. Fed. Bureau of Prisons,* 230 F.3d 371, 377 (D.C.Cir.2000) (noting that it is appropriate for a district court to *sua sponte* dismiss a complaint for failure to state a claim without leave to amend if "the claimant cannot possibly win relief.") (citations omitted); *McBride v. Merrell Dow and Pharm., Inc.,* 800 F.2d 1208, 1212 (D.C.Cir.1986) ("district courts possess the authority to enter summary judgment against a party *sua sponte* ... so long as the losing party was on notice that [he] had to come forward with all of [his] evidence.") (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted)). Moreover, even if actionable events occurred at Lorton, they would have taken place approximately seventeen years before the complaint was filed, as the plaintiff's father had not been incarcerated at the Lorton facility since 1983 and the original complaint was not filed until August 16, 2000. Accordingly, such a claim would likely be subject to several challenges, including a statute of limitations defense.

2. The individual defendants include: Margaret Moore, who was the Director of the D.C. Department of Corrections when Frank Joyner was killed; Odie Washington, the current Director of the D.C. Department of Corrections; Janet Reno, the Attorney General of the United States when Frank Joyner was killed; John Ashcroft, the current Attorney General of the United States; Scott Dodrill, the current Warden at USP Lewisburg; and unknown individuals who were employed at USP Lewisburg at the time Frank Joyner was killed.

secutively to his previously imposed sentence. *Id.* ¶ 4. Thereafter, Frank Joyner was placed into the Federal Bureau of Prisons' ("BOP") system and sent to the U.S. Penitentiary in Marion, Indiana ("USP Marion") on October 14, 1983, where he remained until May 30, 1986. *Id.* ¶¶ 3,6. Frank Joyner was then transferred to a lower security prison at USP Lewisburg, based on the recommendation of the Warden at USP Marion and his representations that Joyner "has maintained an excellent institutional adjustment as evidenced by him not receiving any incident reports ... [,] receives very good work reports from his immediate work detail supervisors ... [,] has established a good working rapport and is not considered a management problem at [USP Marion]". *Id.,* Exhibit ("Ex.") D ¶ 2. (May 19, 1986 Request for Transfer). Frank Joyner remained at USP Lewisburg until August 1997, when he was murdered by other inmates. Fed. Def.'s Resp. ¶ 6.

## II. *Standard of Review*

The federal government has sought dismissal under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3) and 12(b)(6), or, in the alternative, for transfer to the Middle District of Pennsylvania. The D.C. defendants have sought dismissal under Rule 12(b)(1) and for judgment on the pleadings under Rule 12(c). The Court's consideration of the defendants' motions, namely the defendants' responses to this Court's February 12, 2003 Order, has led it to consider matters outside of the pleadings. Upon realizing that it would have to consider such matters in order to first resolve whether D.C. was a proper party, the Court notified the parties that it was going to do so and granted them an opportunity to supplement the record with any additional material pertinent to a motion made under Rule 56 of the Federal Rules

of Civil Procedure.[3] *See* May 15, 2003 Order. Therefore, this Court will begin its examination of whether D.C. is a proper party by examining the plaintiff's claims under Rule 56.

Under Rule 56, summary judgment is generally appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In assessing a summary judgment motion, the Supreme Court has explained that a trial court must look to the substantive law of the claims at issue to determine whether a fact is "material", *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and must treat a "genuine issue" as "one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action", *Sanders v. Veneman,* 211 F.Supp.2d 10, 14 (D.D.C.2002) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

While it is generally understood that when considering a motion for summary judgment a court must "draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true," *Greene v. Amritsar Auto Servs. Co.,* 206 F.Supp.2d 4, 7 (D.D.C.2002) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505), the non-moving party must establish more than "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position", *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. To prevail on a summary judgment motion, the moving party must demonstrate that the non-moving party

---

**3.** The parties failed to file any supplemental materials.

"fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The District of Columbia Circuit has stated that the non-moving party may not rely solely on mere conclusory allegations. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Thus, "[i]f the evidence is merely colorable ..., or is not significantly probative, ..., summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

### III. *Legal Analysis*

### (A) *Should the District of Columbia and its Named Officials be Dismissed as Parties?*

The Court will begin its legal analysis of the defendants' motions by considering whether D.C. and its named officials should be dismissed as defendants in this case. D.C. asserts that because it did not have custody of Frank Joyner at the time of his death, it is not liable for his injuries and thus is not a proper defendant in this matter. *See* D.C. Def.'s Mot. at 4. D.C. also argues that the United States Attorney General ("Attorney General"), and not D.C., was responsible for the transfer of this prisoner to USP Lewisburg. *Id.* at 5. They reason that the authority to accept or refuse any prisoner presented for placement in a federal facility resides solely with the Attorney General, and therefore any harm resulting from the placement of the decedent would have been caused by the actions of the Attorney General.

■ Custody of prisoners who are sentenced in D.C. is vested in the Attorney General pursuant to D.C.Code § 24–201.26 (2001), which reads in pertinent part:

All prisoners convicted in the District of Columbia for any offense ... shall be committed, for their terms of imprisonment, and to such types of institutions as the court may direct, to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinements where the sentences of all such persons shall be served. The Attorney General may designate any available, suitable, and appropriate institutions, whether maintained by the District of Columbia government, the federal government ... or whether within or without the District of Columbia. The Attorney General is also authorized to order the transfer of any such person from one institution to another if, in his judgment, it shall be for the well-being of the prisoner, or relieve overcrowding or unhealthful conditions in the institution where such prisoner is confined, or for other reasons.

Based upon this section of the D.C.Code, it is clear that the discretion as to where prisoners are placed is vested solely in the Attorney General, not in the D.C. Department of Corrections. D.C. recognizes that it owes a duty of care to those persons housed in facilities it operates, but asserts that no such obligation exists in the instant case because at the time of his demise the decedent was housed in a federal penitentiary operated by the BOP. *See* D.C. Def.'s Mot. at 4.

D.C. also relies on *Welch v. Kelly,* 882 F.Supp. 177 (D.D.C.1995), to support its assertion that the Attorney General maintains exclusive jurisdiction over inmates either remanded or transferred to the custody of the BOP. *See* D.C. Def.'s Mot. at 6. Accordingly, by the Attorney General having exclusive control over BOP inmates, D.C. argues that it is therefore divested of any control over inmates held in federal custody. *Id.* In *Welch,* the plaintiff was

convicted and sentenced in the Superior Court and was "transferred by the D.C. Department of Corrections to the custody of the U.S. Bureau of Prisons ...."[4] 882 F.Supp. at 178. After spending eleven years at USP Marion, the plaintiff filed suit against D.C. for its failure to return him to a D.C. facility. *Id.* at 180. The *Welch* Court held, however, that because the plaintiff was in the exclusive custody of the Attorney General, D.C. was not the appropriate defendant because it had not retained any authority over the plaintiff while he was incarcerated at USP Marion. *Id.*

The plaintiff argues that D.C. is a proper defendant in this matter because an inference may be drawn that D.C. was acting under its authority as a representative of the Attorney General and based upon this authority made the negligent decision to transfer the decedent to USP Lewisburg. *See* Plaintiff's Sur-reply to Defendant District of Columbia's Motion to Dismiss the Complaint at 2. The plaintiff is incorrect both factually and legally. It is well understood that "the Attorney General has unfettered discretion to determine where D.C.Code offenders serve their prison sentences and to decide whether and where to transfer them." *Ali v. United States,* 743 F.Supp. 50, 52 (D.D.C.1990) (citing *Smith v. Saxbe,* 562 F.2d 729, 735 (D.C.Cir.1977); *Curry–Bey v. Jackson,* 422 F.Supp. 926, 932 (D.D.C. 1976)) (holding that this authority is "clear and apparently limitless."). D.C.Code § 24–201.26 states that "[t]he Attorney General is ... authorized to order the transfer of any such person from one institution to another if, in his judgment, it shall be for the well-being of the prisoner ... or for other reasons." *Id.* Thus, the plain language of this statute, as held by courts in this jurisdiction, indicates that the authority to transfer D.C. prisoners is placed exclusively with the Attorney General.

However, another member of this Court in *Ross v. United States,* 641 F.Supp. 368 (D.D.C.1986), commented that D.C. officials can, under limited circumstances, be held liable for the transfer of a prisoner to a federal institution. *Id.* at 372. The *Ross* Court noted that a claim against D.C. officials for the negligent transfer of a prisoner "may be envisioned in the proper case" if such officials requested that the prisoner be transferred to a particular federal prison. *Id.* In *Ross,* the prisoner was transferred at the request of D.C. officials, but the Court concluded that because the request was not made for any "particular federal prison," a liability claim could not be sustained against D.C. *Id.* In this case, as the Court discussed above, D.C. officials did not request that Frank Joyner be transferred to USP Lewisburg or even request that he be transferred to a federal facility. Instead, it was a federal official, the Warden at USP Marion, who made the request after Joyner had been placed at the Marion facility following his federal kidnaping and assault convictions. Fed. Def.'s Resp., Ex. D ¶ 2.

Finally, while the plaintiff fails to even address the following point, the Court notes that it appears that there were two inquiries made while Frank Joyner was incarcerated at USP Lewisburg about him being transferred back to the D.C. Department of Corrections. Namely, on March 25, 1992, in accordance with the federal

---

4. It is unclear whether the *Welch* Court was merely reciting the plaintiff's allegation that he was transferred to the BOP by D.C. or whether the court was actually stating as a fact that the transfer was effected by D.C. If it was the latter, this Court must take exception with that factual statement for the reasons stated in this opinion. *See* D.C.Code § 24–201.26 (the Attorney General maintains control over the transfer of D.C. prisoners).

government's Operations Memorandum 178–91 (5140), Joyner was considered for possible transfer by the federal government. *Id.* ¶ 7, Ex. G–H. This request was not approved because it would have adversely affected Joyner's parole eligibility date, a decision that was made by several BOP officials. *Id.* In addition, on January 9, 1995, the D.C. Department of Corrections responded to a Department of Justice inquiry about returning Joyner to a D.C. facility. *Id.* ¶ 8, Ex. I. In its response, a D.C. Department of Corrections official decided that Frank Joyner should not be transferred to a D.C. facility, because the only facility where he could be housed was the D.C. Maximum Custody Facility at Lorton and the warden of that facility was one of the hostages Joyner had been convicted of kidnaping and assaulting while he was detained at Lorton. *Id.* The plaintiff fails to cite to any legal authority that would support a finding of liability by D.C. officials for indicating to the BOP that Joyner should not be transferred to a D.C. facility. And, this Court concludes that even if the plaintiff were to assert that D.C. is liable based on these two acts, there is no legal basis for finding liability in these circumstances.

Accordingly, based on the statutory authority that governs the transfer of D.C. inmates and the cases that have interpreted this statute, the Court concludes that the Attorney General has unfettered and exclusive discretion to transfer D.C. prisoners. And here, because D.C. officials played no role in the decision to transfer the decedent to USP Lewisburg, and there

being no claim by the plaintiff of liability for the D.C. official who indicated that the decedent should not be transferred back to a D.C. facility, D.C. and its named officials are not appropriate defendants in this case and therefore the claims against them must be dismissed.[5]

### (B) *What is the Proper Venue for the Litigation of this Case?*

Having decided that the claims against D.C. and its officials must be dismissed, the Court must now address whether this case should remain in this district or be transferred to the Middle District of Pennsylvania. 28 U.S.C. § 1404(a) (2000) states that a "district court may transfer any civil action to any other district or division where it might have been brought" when doing so would be "in the interest of justice" and would serve the "convenience of parties and witnesses." This provision "is intended to place discretion in the district court to adjudicate motions to transfer according to an 'individualized case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

In this matter, nearly all of the relevant events, including the alleged physical and emotional abuse of Frank Joyner and his subsequent murder, occurred at the U.S. Penitentiary located in Lewisburg, Pennsylvania. In cases in which the plaintiff's claims will require testimony or files that are most easily ob-

---

5. The D.C. officials named as defendants, Mayor Williams, Ms. Moore, and Mr. Washington, must be dismissed because "[g]overnment officials are not liable for torts committed by a subordinate under a theory of responde[a]t superior, absent a showing of direct responsibility for the improper action." *Nowlin v. Dir., D.C. Dep't of Corr.,*

689 F.Supp. 26; 27 (D.D.C.1988) (citing *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)). Here, the plaintiff has failed to make any claims alleging direct responsibility by these individual defendants for Frank Joyner's transfer to USP Lewisburg or the events that caused his death.

tained at or near the place of incarceration, "the district in which the institution is located will ordinarily be the more convenient forum." *Starnes v. McGuire*, 512 F.2d 918, 931 (D.C.Cir.1974). In view of the fact that the critical events in this matter occurred within the confines of USP Lewisburg, it is logical to conclude that the decedent's institutional records and many of the potential witnesses are current inmates or prison guards who reside in Pennsylvania. The plaintiff maintains that due to the significant period of time which has elapsed since the murder of the decedent, it is unreasonable to assume that the majority of the witnesses are still present in Pennsylvania. Although it is true that the Court does not know the present location of such potential witnesses, it is fair to assume that it is highly unlikely that any of these potential witnesses are in the District of Columbia. And, to the extent that potential inmate witnesses have been transferred from USP Lewisburg, it will be easier to make them available for their testimony there, as there is no federal facility for the housing of sentenced federal inmates in the D.C. area.

While it is true that "ordinarily the plaintiff's choice of forum is entitled to deference, several decisions in this Circuit suggest that [such a decision] is not entitled to any great weight where 'the activities [forming the basis of the suit] have little, if any, connection with the chosen forum.'" *Nichols v. United States Bureau of Prisons*, 895 F.Supp. 6, 8 (D.D.C.1995) (second alteration in original) (citations omitted). With the dismissal of D.C. and the D.C. officials as defendants, the only connection this action has with D.C. is the situs of the BOP and the Attorney General's headquarters. As the District of Columbia Circuit has noted, "[c]ourts in this circuit must examine challenges to ... venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia. By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C.Cir.1993). Considering that the Middle District of Pennsylvania is the forum where the prison of Frank Joyner's murder is located, where the records and other physical evidence will be found, and where it is likely that most of the potential witnesses are located, it is in the interest of justice and the convenience of the parties and the witnesses that this case to be transferred to the Middle District of Pennsylvania.

## IV. *Conclusion*

For the aforementioned reasons, this Court will dismiss the District of Columbia and its named officials as defendants and will transfer this matter to the United States District Court for the Middle District of Pennsylvania.[6]

## *ORDER*

Upon consideration of the Federal Defendant's Motion to Dismiss the Amended Complaint, or, in the Alternative, for Transfer and the District of Columbia's Motion for Judgment on the Pleadings and to Dismiss the Complaint, and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is hereby

**ORDERED** that the District of Columbia, Mayor Anthony Williams, Margaret Moore, and Odie Washington be **DISMISSED** as defendants in this case. It is

**FURTHER ORDERED** that the above-captioned case be **TRANSFERRED** to the

---

6. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

United States District Court for the Middle District of Pennsylvania.

**SO ORDERED** this 2nd day of June, 2003.