PLATTE PIPE LINE COMPANY, a Delaware corporation, Plaintiff,

v.

UNITED STATES of America, and Willwood Irrigation District, a Wyoming corporation, Defendants.

No. C84–0013–B.

United States District Court, D. Wyoming.

Aug. 8, 1984.

Patrick Dixon, Murane & Bostwick, Casper, Wyo., for plaintiff.

Francis Leland Pico, Asst. U.S. Atty., Cheyenne, Wyo., for defendants.

## ORDER GRANTING DEFENDANT UNITED STATES' MOTION TO DISMISS

BRIMMER, District Judge.

The above-entitled matter came before the Court upon a motion to dismiss filed by the United States. The plaintiff was represented at oral argument by Patrick Dixon, Esq., the defendant United States by Francis Leland Pico, Esq., and the defendant Willwood Irrigation District was not represented at the hearing. The Court has reviewed the briefs filed in this case and is now fully advised in the premises.

The relevant facts for the purpose of this motion are not disputed. The Department of the Interior entered a contract with the Willwood Irrigation District under which the district would be improved. This work included burying a portion of the plaintiff's pipeline. An employee of the district subsequently ruptured the plaintiff's pipeline but at a time when oil was not being transported. When oil was transported, some 3,880 barrels of oil escaped from the pipeline and drained into the Shoshoni River. The plaintiff contends that it spent approximately $425,000 in the containment and cleanup of the oil spill. The plaintiff has alleged three theories against the United States: First, the plaintiff alleges that the United States had a nondelegable duty to the plaintiff because of the ultrahazardous nature of the work at the project and that the government breached this duty; Second, the plaintiff alleges that the government was negligent and that this negligence caused the spill; Third, the plaintiff

46 alleges that the government is responsible under the doctrine of respondeat superior for the negligence of the district in causing the oil spill. The plaintiff contends that jurisdiction for its claims exists under the Federal Tort Claims Act, 28 U.S.C. 1346(b).

■ The United States has moved to dismiss the entire case on the theory that the Claims Court has exclusive jurisdiction. Section 311(i) of the Federal Water Pollution Control Act (the so-called Clean Water Act) prohibits the discharge of oil in harmful quantities into the navigable waters of the United States. 33 U.S.C. 1321(b)(3). The Clean Water Act also provides that an action for the costs of cleaning up an oil spill may be brought against the United States in the Claims Court if the discharge was caused solely by the negligence of the United States. 33 U.S.C. 1321(i). The United States contends that this provision precludes this Court from exerting jurisdiction over the plaintiff's claims based on the Federal Tort Claims Act. Neither the parties, nor the Court, have been able to discover any Court decisions discussing this question of statutory construction before the Court.

The starting point in every case involving the construction of a statute must be the language itself. *Watt v. Alaska,* 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981). The language of the two statutes in question simply is not dispositive. The plaintiff contends that § 311(i) states that an action *may,* as opposed to must, be brought against the United States. This reasoning is not persuasive. Many cases have ruled that the context of a statute must be considered in order to determine whether Congress intended to confer a discretionary power or an imperative duty. *Thompson v. Clifford,* 408 F.2d 154 (D.C. Cir.1968); *U.S. v. Reeb,* 433 F.2d 381 (9th Cir.1970), *cert. denied,* 402 U.S. 912, 91 S.Ct. 1391, 28 L.Ed.2d 654 (1971). *See Watt v. Alaska,* 451 U.S. 259, 266, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981). Upon reflection, the Court is of the opinion that it would frustrate Congress' intent, as displayed by § 311(i) of the Clean Water Act, to allow the plaintiff to bring a negligence action for the costs of the cleanup under the Federal Tort Claims Act.

■ This conclusion is inevitable because Congress has established a number of hurdles that must be crossed before recovery is possible under the Clean Water Act. These requirements could be avoided completely if, alternatively, an action could be brought under the Federal Tort Claims Act. Under the Clean Water Act, the person seeking recovery has the burden of showing that he took all reasonable care to forestall the possible harm that could result from the negligence of the United States. *Union Petroleum Corp. v. United States,* 651 F.2d 734 (Ct.Claims 1981, based on the use of the term "solely" in the Act). Unless the party seeking recovery could establish this element, he would be precluded from recovering from the government. If the same party was able to bring his action under the Federal Tort Claims Act, however, such a failure would not be dispositive, at least in Wyoming. Under the Federal Tort Claims Act, a federal court applies the law of the state in which the alleged act or omission occurred, which means that this Court would apply Wyoming's law of comparative negligence if the plaintiff proceeded under the Federal Tort Claims Act. 28 U.S.C. 1346(b). It simply would not make sense within the complicated and pervasive structure of the Clean Water Act to allow the plaintiff to alter his burden of proof by the simple allegation that his action is brought under the Federal Tort Claims Act. This proposed construction of the two statutes is also supported by several axioms of statutory construction. This construction gives meaning and purpose to each statute and avoids a conflict. *People of Territory of Guam v. Quinata,* 704 F.2d 1085 (9th Cir.1983). Under this construction, actions for the recovery of cleanup costs would be governed by the Clean Water Act and other tort actions against the United States would be governed by the Federal Tort Claims Act. The proposed construction also is supported by

the axiom that the more recently enacted legislation should control. *Travelers Ins. Co. v. Panama-Williams, Inc.*, 597 F.2d 702 (10th Cir.1979).

The plaintiff contends, however, that language in cases from other circuits implies that a negligence action for cleanup costs can be brought under the jurisdiction of the Federal Tort Claims Act. The plaintiff appears to be referring primarily to *Davis v. United States*, 722 F.2d 1157 (4th Cir.1983) in which the fourth circuit stated that absent allegations of negligence or wrongful conduct on the part of the United States other than alleged violation of the Clean Water Act, the district court had correctly dismissed a suit under the Clean Water Act when the plaintiff had failed to meet the requirements of the citizen suit provisions. This language is ambiguous. It certainly isn't clear that the fourth circuit would sanction an action for cleanup costs against the government when the plaintiff simply alleges negligence and seeks to recover costs incurred while cleaning up an oil spill.

In oral argument the plaintiff also argued that it would be unfairly penalized if the Court ruled that the Claims Court had exclusive jurisdiction because it would be forced to litigate its claims against the United States in the Claims Court while it tried its claim against the Willwood Irrigation District in this Court. The plaintiff contends that the interests of judicial economy would be served if it was able to bring its action against the United States in this Court. Regardless of the wisdom of the plaintiff's argument, neither this Court nor any other federal court has the power to draft legislation to define its own jurisdiction. Therefore, it is

ORDERED that the United States' Motion to Dismiss the plaintiff's claims for any expenses incurred in the course of cleaning up the alleged oil spill be, and hereby is, granted. The case is dismissed against the United States of America without prejudice, so that it may be brought by plaintiff in the Claims Court.