A/S D/S SVENDBORG & D/S AF 1912 A/S, Plaintiffs,

v.

UNITED STATES of America, Defendants.

UNITED STATES of America, Plaintiffs,

v.

A.P. MOLLER, Moller Steamship Company, Inc., A/S D/S SVENDBORG & D/S AF 1912 A/S and the West England Ship Owners Mutual Protection & Indemnity Association (Luxembourg), Defendants.

No. 85 Civ. 4930 (JMW).

United States District Court, S.D. New York.

Oct. 7, 1987.

Messrs. Freehill, Hogan & Mahar, New York City by Patrick J. Bonner, for Svendborg.

Richard K. Willard, Asst. Atty. Gen., Rudolph W. Giuliani, U.S. Atty., and Janis G. Schulmeisters, Atty. in Charge, Torts Branch, Civ. Div., U.S. Dept. of Justice, New York City, for U.S.

## ORDER

WALKER, District Judge:

On June 28, 1983, the vessel Peter Maersk, proceeding upstream on the Cape Fear River, approximately 15 miles from the Atlantic Ocean, struck a submerged cement object which ripped the ship's hull and resulted in the discharge of about 1,000 barrels of oil. Plaintiffs Svendborg et al. ("Svendborg") incurred costs of $58,-969.40 in their clean-up of the oil spill. Svendborg sought recovery in this Court of its costs pursuant to the Federal Water Pollution Control Act, which authorizes, under certain circumstances, the recovery "of reasonable costs incurred" in the clean-up of discharged oil or a hazardous substance "in a suit which may be brought against the United States Government in the United States Claims Court ..." 33 U.S.C. § 1321(i)(1). Svendborg also alleged negligence of the United States and sought recovery of $450,000 damages to the vessel's hull, pursuant to the Suits in Admiralty Act, 46 U.S.C. § 742. On October 15, 1986, 653 F.Supp. 283, this Court granted summary judgment in favor of Svendborg on its claim to recover its clean-up costs.

In making its determination, the Court considered, as a threshold matter, whether it had jurisdiction to hear the claim. The Court concluded that "[w]here the only substantive issues in a controversy arise out of the Water Pollution Control Act, a plaintiff must bring any suit against the United States Government in the United States Court of Claims." However, the Court continued, because the Court had jurisdiction to hear a related federal claim, the Court could hear the Water Pollution Control Act claim through the exercise of its pendent jurisdiction.

The United States now moves, pursuant to Fed.R.Civ.P. 54(b), for revision of the Court's opinion and, in support of their motion, for leave to submit additional materials, and for such other relief as the Court may deem just and proper. Upon such reconsideration, including matters and authorities not presented in the original motion, this Court now determines that it is without jurisdiction to hear Svendborg's claim for recovery of costs for the clean-up of the discharged oil and hereby dismisses the claim.

## Discussion

At issue here are two provisions of the Federal Water Pollution Control Act, specifically 33 U.S.C. § 1321(i)(1) (the "Sec-

tion") and § 1321(n). The former provides that

> [i]n any case where an owner or operator of a vessel or an onshore facility or an offshore facility from which oil or a hazardous substance is discharged in violation of subsection (b)(3) of this section acts to remove such oil or substance in accordance with regulations promulgated pursuant to this section, such owner or operator shall be entitled to recover the reasonable costs incurred in such removal upon establishing, in a suit which may be brought against the United States Government in the United States Claims Court, that such discharge was caused solely by ... (C) negligence on the part of the United States Government ...

§ 1321(n) provides in relevant part that "[t]he several district courts of the United States are invested with jurisdiction for any actions, other than actions pursuant to subsection (i)(1) of this section, arising under this section."

■ The language of an act, of course, is the starting point for all statutory interpretation. *Watt v. Alaska*, 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981); *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 210, 99 S.Ct. 1067, 1072, 59 L.Ed.2d 261 (1979). Here, the statute is clear; no ambiguity as to the language exists. A suit under § 1321(i)(1) may be brought in the United States Claims Court. United States District Courts have jurisdiction over actions brought pursuant to § 1321 "other than actions pursuant to subsection (i)(1)."

■ Moreover, § 1321(i)(3) provides that "[a]ny amount paid in accordance with a judgment of the United States Claims Court pursuant to this section shall be paid from the funds established pursuant to subsection (k) of this section." Therefore, "the fund established by the [1970 Act] is available only to pay judgments of the Court of Claims and not judgments of a federal district court...." *Gulf Refining Company v. United States*, 69 F.R.D. 300, 302–03 (E.D.Tx.1976). There is nothing in the statute to support the view that Congress has authorized a suit against the United States, named the court in which suit must be brought, created a fund out of which judgments will be paid, and at the same time, by its silence, determined that another unnamed court may take jurisdiction and its judgments will be paid from some other unnamed source.

The legislative history of § 1321(i)(1) reveals nothing that would lead one to believe depths of meaning lie hidden beneath the plain meaning of the words themselves. The Section finds its genesis in The Water Quality Improvement Act of 1970, P.L. 91–224, 84 Stat. 91 (the "1970 Act"), and the Federal Water Pollution Control Act Amendments of 1972 (the "1972 Act"), P.L. 92–500, 86 Stat. 816, the latter expanding the Section under the Water Quality Improvement Act to include not just oil but other hazardous substances.

Section 11(f) of the 1970 Act, the section corresponding to § 1321(i)(1), contains five "authorization to sue" provisions. Four of the provisions authorize the United States to sue parties for an unauthorized discharge "in any court of competent jurisdiction." The fifth provision authorizes claimants such as Svendborg to sue to recover clean-up costs in the Claims Court. The legislative history contains no suggestion that authorization to sue in any other court was contemplated. Similarly, Sections 311(f) and 311(g) of the 1972 Act, together corresponding to § 1321(i)(1), contain five "authorization to sue" provisions, four of which authorize the United States to sue "in any court of competent jurisdiction" and one which authorizes those claimants such as Svendborg to sue in the Claims Court. Had the Congress intended to authorize a suit by similarly situated plaintiffs "in any court of competent jurisdiction", it could well have used that language, as it did for the four accompanying "authorization to sue" provisions.

Other courts have read the Section as vesting exclusive jurisdiction in the Claims Court. *See Platte Pipe Line Company v. United States*, 599 F.Supp. 45, 46 (D.Wyo. 1984) ("Upon reflection, the Court is of the opinion that it would frustrate Congress' intent, as displayed by [§ 3121(i)(1) ] of the Clean Water Act, to allow the plaintiff to bring a negligence action [in federal dis-

trict court] for the costs of the clean-up under the Federal Tort Claims Act"); *Gulf Refining Co. v. United States*, 69 F.R.D. 300, 302 (E.D.Tx.1976) ("the Court of Claims was expressly chosen by Congress as the exclusive forum for recovery"); *Burgess v. M/V Tamano*, 373 F.Supp. 839, 850 (S.D.Maine 1974) (the 1970 Act "is explicit that the Court of Claims has exclusive jurisdiction of any action brought pursuant to that action").

 Since the United States is the authorized target of suits under § 1321(i)(1), sovereign immunity requires construction of the statute in the sovereign's favor. "It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980), quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). As such, "we must construe waivers strictly in favor of the sovereign." *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250; *Brown v. General Services Administration*, 507 F.2d 1300 (2d Cir.1974). The Court cannot "enlarge [the waiver] beyond what the language requires." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983), quoting *Eastern Transportation Co. v. United States*, 272 U.S. 675, 686, 47 S.Ct. 289, 291, 71 L.Ed. 472 (1927). Indeed, a waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969).

 Where jurisdiction over a claim has been entrusted to a particular court and the prospective defendant is the United States, a different court cannot hear the claim through its pendent jurisdiction. To do so would be to "enlarge [the waiver] beyond what the language requires." *Ruckelshaus*, 463 U.S. at 685–86, 103 S.Ct. at 3277–78. *See McKay v. United States*, 703 F.2d 464, 470–71 (10th Cir.1983) (rejecting jurisdiction where plaintiff sought to bring a Tucker Act claim, under which jurisdiction lies exclusively with the Claims Court, as a pendent claim to a claim properly before the court); *Ware v. United States*, 626 F.2d 1278, 1287 (5th Cir.1980) ("[t]his court cannot, by using the judge-made doctrine of pendent jurisdiction waive the immunity of the United States where Congress, constitutional guardian of this immunity, has declined to do so"); *Lenoir v. Porters Creek Watershed District*, 586 F.2d 1081 (6th Cir.1978) (rejecting pendent jurisdiction of a Tucker Act claim; "pendent jurisdiction has no application to a claim against the United States"); *Ross v. United States*, 641 F.Supp. 368, 376 (D.D.C.1986) (rejecting pendent jurisdiction of Tucker Act claim). To say that a statute does not prohibit the exercise of pendent jurisdiction is to attack the issue from the wrong perspective. The relevant inquiry, when sovereign immunity is concerned, is whether the statute clearly contemplates the exercise of jurisdiction by another court.

Congress has vested exclusive jurisdiction in the Claims Court to hear suits brought under § 1321(i)(1). Congress has not clearly waived the United States' sovereign immunity to any greater extent. Such a waiver may not be supplied by this Court. Svendborg's claim for the costs of its oil clean-up is therefore dismissed.

SO ORDERED.